Davis v. Roseberry.

---

No. 19,446.

JAMES W. DAVIS and ELIZABETH DAVIS, *Appellees,* v. J. E. ROSEBERRY and CLYDE ROSEBERRY, Partners, etc., *Appellants.*

### SYLLABUS BY THE COURT.

REAL-ESTATE AGENT—*Contract Made with Purchaser—Right of Forfeiture—Liquidated Damages—Commissions.* Plaintiffs employed defendants, who are real-estate brokers, to find a purchaser for a farm. They procured a customer who entered into a written contract with plaintiffs by which plaintiffs agreed to sell and he agreed to purchase the farm for $12,000, a warranty deed to be executed by plaintiffs and deposited in escrow and delivered to the purchaser on payment of the balance. When the contract was executed he paid $500 on the purchase price, which was placed in the hands of the defendants as agents for the plaintiffs. There was a provision in the contract that if the purchaser failed to make the subsequent payment he should forfeit the $500, which should be

retained by the plaintiffs as liquidated damages, and the parties were to be relieved from the further performance of the contract. *Held:* (1) The contract is not an option but an agreement for a sale and purchase of lands. (2) Plaintiffs, having agreed to accept $500 in lieu of performance, can not as against the defendants deny that the payment of that sum was equivalent to performance. (3) The defendants were entitled to their commission on the $12,000.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed May 8, 1915. Reversed.

*Albert Faulconer*, of Arkansas City, for the appellants.

*William P. Hackney, J. T. Lafferty,* and *L. D. Moore,* all of Winfield, for the appellees.

The opinion of the court was delivered by

PORTER, J.: This case presents a single question of law which arises on the pleadings. The plaintiffs sued to recover $500, the proceeds of a check collected by the defendants which the plaintiffs claim belong to them. The court sustained a motion for judgment on the pleadings and gave judgment against the defendants for the amount sued for. The defendants appeal.

The plaintiffs owned a farm and listed it for sale with the defendants who are real-estate agents. The answer alleged that the defendants procured M. L. Harris as a purchaser and brought him to the plaintiffs; that Harris was then and there able, ready and willing to purchase the farm at plaintiffs' price, and that on the 13th day of December, 1913, the plaintiffs entered into a written contract with him for the sale of the farm. A copy of the contract was attached to the answer. The first payment on the purchase was $500, and this sum was paid to the defendants as agents of the plaintiffs. The defendants claim that they had earned their commisson of $325, and in their answer alleged that they had tendered the plaintiffs $175, the balance above the commission. The case turns upon the question

whether the contract entered into between the plaintiffs and Harris was a contract of sale or a mere option. The trial court held it to be an option and that the defendants had not earned a commission on the purchase price.

The contract expressly states that the plaintiffs "agree to sell and do sell to party of the second part" the real estate (describing the same) for the sum of $12,000. There was the usual provision for furnishing an abstract, and it was agreed that upon the execution of the contract Harris should pay $500 of the purchase price, and that the contract together with a warranty deed conveying the premises from the plaintiffs to him should be deposited in escrow in a bank to be delivered to Harris upon his payment of the balance of the purchase price, $11,500, which payment was to be made on or before the 15th day of April, 1914. The contract in express terms recited that in consideration of the covenants of the parties of the first part Harris agreed to purchase the real estate at the price mentioned. Possession was to be delivered to him "on the 15th day of April, 1914, or as hereafter agreed upon." When the contract was executed Harris made the first payment of $500 by check to the defendants as agents for plaintiffs. Afterwards he declined to complete the purchase and submitted to a forfeiture of the $500. The decision of the question turns, however, upon the effect to be given to the following clause in the contract:

"It is further agreed . . . that in the event party of the second part fails, neglects and refuses to pay the balance of the purchase price, to wit, $11,-500.00 . . . on or before the 15th day of April, 1914, then and in that event the . . . bank is hereby authorized to return to the parties of the first part the deed deposited with it conveying said described premises to party of the second part, and the amount of $500.00 paid . . . by party of the second part is hereby forfeited . . . as liquidated damages, said parties of the first part retaining said amount as herein provided, and the parties hereto relieved from

the further performance of any of the covenants herein set forth and this contract is to be held null and void and of no effect."

Plaintiffs rely very largely on the case of *Aigler v. Land Co.*, 51 Kan. 718, 33 Pac. 593. That case merely decides that where a broker who agrees to produce a purchaser ready, able and willing to take the land at the price named by the principal produces a person who is unwilling to do that, but accepts a mere option to purchase, the broker is not entitled to his full commission. Of course, in a case of that kind he is entitled to the usual commission on the amount of the option forfeited. In the Aigler case the contract itself is not set forth but the opinion states that it was treated "by the parties and the court below as only an option on the property," and that the person introduced as a purchaser "signed a written option contract to purchase the real estate" (p. 719) for a stated price. The opinion therefore is an authority no further than to hold, what may be conceded to be the law everywhere, that in such a case the agent is not entitled to a full commission. Was the contract between the plaintiffs and Harris a mere option?

The distinction between a sale, an agreement to sell, and an option to purchase lands, is well defined in the opinion in *Ide v. Leiser*, 10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17:

"The first is the actual transfer of title from grantor to grantee, by appropriate instrument of conveyance. The second is a contract to be performed in the future, and if fulfilled, results in a sale. It is a preliminary to a sale, and is not the sale. Breaches, rescission, or release may occur, by which the contemplated sale never takes place. The third, an option, originally, is neither a sale nor an agreement to sell. It is simply a contract, by which the owner of property (real estate being the species we are now discussing) agrees with another person that he shall have the right to buy his property, at a fixed price, within a time certain. He does not sell his land; he does not then agree to sell it; but he does

then sell something, viz., the right or privilege to buy at the election, or option, of the other party." (p. 11.)

The contract in the present case is an agreement to sell as well as one to purchase. It recites that the owners of the land (the plaintiffs) agree to sell and do sell the real estate (describing the same) for the sum of $12,000; that in consideration of the covenants made and entered into by the owners, Harris "agrees to purchase and does purchase . . . the real estate above described for the sum of $12,000.00, to be paid as set forth, to-wit, $500.00 upon the execution of this contract," the balance to be paid to the bank for the benefit of the plaintiffs upon the delivery of the warranty deed which was to be executed and deposited by the plaintiffs on the execution of the contract. While the contract was not a sale, it was an agreement to sell and an agreement to purchase at a stated price. If it had been a mere option there would have been no occasion for the execution and deposit of the title deeds. The plaintiffs' construction of the contract, which the trial court appears to have adopted, would look alone to the subsequent clause, which we construe to be nothing more than a provision attempting to liquidate the damage in case of the failure of the purchaser to comply with the agreement and make the subsequent payment. The defendants procured a person who was willing to enter into an enforceable contract with the principal for the purchasing of the lands at the price and terms agreed upon. The plaintiffs saw fit to provide in the contract that the payment of $500 should be equivalent to the performance of the contract by Harris. They are certainly not in a position now to deny that the payment of that sum is, as between themselves and the defendants, equivalent to any advantage they may have gained by the full performance of the contract. Upon what theory can plaintiffs claim the right to recover any portion of the $500 except for the services performed by the defendants in procuring Harris to enter into the contract in compliance of which he paid the money?

In *Green v. Fist*, 89 Kan. 536, 132 Pac. 179, the agent procured a person who entered into a contract with the principal to exchange properties, and a clause in the contract provided that in case of failure of either party to perform the contract he should forfeit to the other the property represented by the deed and bill of sale as damages. The trial court construed the contract as granting to each party a mere option to exchange and instructed that plaintiff was not entitled to a commission. The judgment was reversed, and it was held that the mere fact that "by its terms the parties might be held to have attempted to liquidate the damages in case of a breach made it no less an enforceable contract." (p. 537.) It was further said in the opinion:

"Whether the courts would declare the provision that in case of a breach of the contract the party in fault should forfeit all his property involved in the trade to the other, regardless of the actual damages sustained, was an agreement for liquidated damages or for a penalty, is not before us. All that we decide is that the contract was not an option but an agreement for an exchange of properties, which was enforceable." (p. 538.)

In *Betz v. Land Co.*, 46 Kan. 45, 26 Pac. 456, it was held that when the broker has procured a party with whom his principal is satisfied and who enters into a written contract to buy and is financially able to perform the contract, the commission has been earned, although the principal has the option under the contract to declare a forfeiture thereof if the installments are not paid and does declare the contract forfeited for such nonpayment; and the general rule which obtains everywhere is, that where the broker by his efforts has brought the parties together and procured a person ready, able and willing to purchase, and their meeting results in the execution of an enforceable contract for the sale and purchase of the land, he has performed all he is called upon to do. It is no part of his duty to see that the terms of the contract are complied

with (*Beougher v. Clark,* 81 Kan. 250, 106 Pac. 39), and the subsequent inability of the purchaser to pay and the rescission of the contract by mutual consent because of such inability will not deprive the broker of his right to a commission in the absence of an express agreement to that effect (*Hutton v. Stewart,* 90 Kan. 602, 135 Pac. 681). In the case last cited the contract was held valid and binding because Stewart could have maintained an action thereon for specific performance, or for damages. The same rule was applied where the principal kept the amount paid by the purchaser and refused to sue for the balance under a binding contract. (*Ward v. Cobb,* 148 Mass. 518, 20 N. E. 174.)

A quite similar situation arose in *Gilder v. Davis et al.,* 137 N. Y. 504, 33 N. E. 599, 20 L. R. A. 398. In that case, too, the earnest money was paid to the broker, who insisted upon his right to retain a commission, and the action was brought by the owner of the land to recover the earnest money. The broker had negotiated the sale at the price named by the principal, $125,000. The agreement provided that $10,000 was to be paid to bind the transaction, and it was paid to the broker. The balance was to be paid within four months. There was a provision, however, that if the purchaser failed to make the $115,000 payment within that time, the $10,000 deposited should be forfeited and no further liability of any kind should be incurred by the purchaser. By a subsequent arrangement between the principal and the broker the latter agreed that the commission on the sale should not be due until the final purchase money was paid. The purchasers did not take the property and forfeited the $10,000. The plaintiff demanded the whole of that sum from the broker, who refused to pay more than $9500, claiming the balance as a commission on the $10,000. The trial court held that the principal was entitled to recover the $500, and directed a verdict. The court of appeals reversed the

27—95 KAN.

case and held that the broker was entitled to the $500 commission, and in the opinion used this language:

"While it is not necessary to be determined upon this appeal, it is by no means clear that when the contract was closed between the plaintiff and [the purchaser] the defendants were not entitled to their full commissions. They had then negotiated a contract of sale which was satisfactory to the plaintiff and which was approved and confirmed by him. If there had been no further agreement between the parties as to the commissions, it might be claimed, at least with some plausibility, by the defendants, that they were entitled to their commissions, *as they would have been if they had negotiated a contract containing a stipulation for the payment of liquidated damages in case of failure of performance* by either party." (Italics ours.) (p. 509.)

This case is cited by the defendants in their brief, but it does not decide the precise question because it was not involved.

In *Leete v. Norton,* 43 Conn. 219, the broker procured a purchaser who entered into a contract which provided for a sum of money as liquidated damages in case the purchaser failed to take the property. It was held by the Connecticut court that the principal could not be allowed to deny that this money was an equivalent as between himself and the broker to the purchase money, and thus avoid payment of commissions, because the broker had rendered services for him which he agreed were an equivalent to procuring an exchange of the property.

We think the doctrine of the case just cited applies to the situation here and that plaintiffs can not be permitted as against their agents to deny that they were satisfied to accept the stipulated sum as equivalent to the performance of the contract. They are entitled, of course, to the balance of the deposit less the commission of $325, and the defendants upon the pleadings are entitled to judgment for costs.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

MASON, J. (dissenting) : The writing signed by the parties appears to me to be on the part of Harris a mere option rather than an enforceable contract to buy. Its character should be determined by its legal effect rather than by what the parties chose to call it.   Essentially it amounts to this: Harris pays $500, in return for which he obtains the right to take the property on the terms stated, with the unrestricted privilege of refusing to do so if he shall so elect.   If the money paid is regarded as liquidated damages in the event of his refusal or inability to carry out the deal, that does not affect the question.   An agreement as to the amount of damages to be recoverable in such case would not prevent the specific enforcement of the contract.   "The fact that by its terms the parties might be held to have attempted to liquidate the damages in case of a breach made it no less an enforceable contract."   (*Green v. Fist,* 89 Kan. 536, 537, 132 Pac. 179.) The writing here involved, if enforceable at all, would support an action by the vendor for specific performance (36 Cyc. 565) ; but such proceeding is prevented by its concluding provision, that if Harris refused to pay the stipulated price at a fixed time the parties were relieved from further performance of its covenants, and it was to be held null and void.