SAMMONS, commissioner, *et al.* v. STURGIS *et al.*

1. Where a notice of the letting of a contract under the provisions of the Code of 1910, §§ 387, 388, for contracting by county authorities, was published once a week for four weeks, but in the first publication a date was stated as that upon which bids would be received, different from the real date, and the correct date was stated in the notice published for only three weeks, there was not a sufficient compliance with the

statute upon the subject of giving notice of the letting of contracts by county authorities; and the defect in this advertisement of the letting of the contract renders void such contract entered into by the bidders and the county authorities. Consequently the court did not err in enjoining the carrying out of such contract by the bidders and the county authorities.

(*a*) It further follows, that, having held that the court-house could not be built, there was no error in enjoining the use of convict labor in erecting the contemplated building.

·(*b*) The court, however, should not have restrained the collection of the tax levied for the purpose of building a court-house, it not appearing that there was any abuse of the discretion vested in the commissioner of roads and revenues in proceeding to erect a new court-house.

2. Private citizens can not generally interfere to have a public nuisance enjoined.

3. The court was not authorized, under the pleadings in the case, to make an adjudication respecting the title to the lot of land known as the court-house square or the public square in the town of Gibson.

4. A warrant issued by the commissioner of roads and revenues in part payment of the purchase-price of a lot upon which to erect a court-house could not lawfully be paid out of the public-road fund.

5. The court did not err in granting the injunction restraining the payment of the other warrants referred to in the petition, given for the payment of the purchase-price of the lot upon which to build the contemplated court-house.

AUGUST 19, 1916.

Injunction. Before Judge Hammond. Glascock superior court. November 1, 1915.

J. A. Sturgis and twenty others, alleging themselves to be citizens and taxpayers of Glascock County, brought their petition, for themselves and such other citizens of the county as might wish to join therein, against Henry G. Sammons, commissioner of roads and revenues of Glascock County, hereinafter referred to as the commissioner, J. W. McMillan & Sons, of Baldwin County, J. D. Kitchens, tax-collector, and J. S. Snider, treasurer of Glascock County, and against W. D. Allen, C. M. Snider, J. C. Newsome, and Laura M. McCool, alleging as follows: Henry Sammons, the commissioner, on the 30th day of September, 1915, published in the Gibson Record, the newspaper in which are published the legal advertisements of the county, a notice for sealed proposals for the building of a court-house. In response to said notice there were two bids, one of which was made by J. W. McMillan & Sons; and to them the commissioner awarded the contract for the erection of the court-house. This contract, dated September 25, 1915, pro-

vides that McMillan & Sons shall furnish all the brick, lime, and other specified material, and the masons to lay the brick; and that the commissioner shall furnish all labor that will be required to do the hauling; make the mortar, build the scaffold, make the cement, and do other specified work. The notice published for sealed proposals is insufficient, for the reason, among others, that it was not published once a week for four weeks, as the law requires; and for this reason the contract between the commissioner and the bidders is illegal and void. The commissioner passed an order and entered it on the minutes, declaring that the public square in the town of Gibson, where the court-house is now located, is an unsuitable site for the rebuilding of the court-house; and locating the proposed new court-house on a lot of land within the corporate limits of Gibson but off the public square, this lot being made up of four separate parcels purchased from the defendants Allen, Newsome, Snider, and McCool, aggregating about two acres of land, for the payment of which the commissioner issued his warrant on the road fund to W. D. Allen for $600, payable January 1, 1916, with interest at eight per cent. after January 1, 1916, a warrant on the general fund in favor of Snider for $500, a warrant to Newsome on the general fund for $500, and a warrant to McCool on the general fund for $500. Each of these warrants is illegal and void, as the road fund could not be used for any purpose other than building, improving, and repairing the public roads. The taxable property of Glascock County does not exceed $650,000, and the treasurer has not sufficient funds to pay off and discharge these warrants, and the commissioner has no power to levy a tax upon the property of the county to discharge the warrants when they mature. The order authorizing the purchase of said lands was illegal and void, because, having no direct tax levy to raise a fund with which to pay said warrants, their issue was an attempt of the commissioner to create a debt without authority of law. He has an agreement with the persons from whom he purchased the lands that each of the warrants is to be renewed and extended after January 1, 1916. Immediately after Glascock County was laid off and established, Calvin Logue donated to John Land, Jeremiah Wilcher, and others, judges of the inferior court of Glascock County, twenty acres of land, a part of which is embraced in the public square; this land was dedicated to the

public; certain of the petitioners bought and improved lots with reference to this dedicated land; and the town accepted the donation of the square for public use, and exercised rights and privileges over ·it, and it can not be sold by the county authorities. But, while they would have the right to claim an estoppel on account of these facts, petitioners do not at this time seek an injunction on this ground, and, "in order to avoid multifariousness in the bill, they may seek an injunction upon the grounds of an estoppel in a separate bill when the said Henry G. Sammons, commissioner, undertakes to sell said land. Petitioners only allege the donation above indicated, of said public square for public uses, for the purpose of showing that the public square is not an asset of the county, and that it could not be sold, and that it could not be counted as an asset for paying debts of the county." There are no available funds in the county treasury, sufficient for paying the current expenses of the county and the accrued unpaid warrants now outstanding, and for paying for the court-house, as let to McMillan & Sons, the sum of $2250.00, and for the lumber, carpenter work, roofing, painting, etc., an additional sum of not less than $1500. On August 21, 1915, the commissioner levied a direct tax of three mills on the dollar to pay for the new court-house; this levy on the taxable property of the county would raise a fund not exceeding $1950; and the contract of the commissioner to pay McMillan & Sons $2250 is an attempt to create a debt of Glascock County without submitting the same to the qualified voters of the county for the purpose of authorizing such a debt, as provided by law; and the contract is therefore illegal and void. Sammons, as commissioner, has declared his purpose and intention to work on the proposed new court-house the convicts apportioned to Glascock County for the purpose of working the public roads; and these convicts are to perform all the work on the court-house except that provided for under the contract with McMillan & Sons. This contemplated action of the commissioner is illegal, as the law contemplates that the labor of the convicts shall be confined to the public roads of the county. It is the purpose and intent of the commissioner to locate on the small tract of land purchased by him from Allen, Snider, Newsome, and McCool, which is located in a thickly populated section of Gibson, not only the proposed court-house but a permanent convict camp

and barn close to the court-house for the purpose of housing the convicts, the stock, road machinery, etc.; and if the convict camp is so located, it would be "a perpetual nuisance to your petitioners and to the citizens of Glascock County and of Gibson, Georgia, . . and a nuisance which would be irreparable in damages, even if the county were liable in damages for maintaining a nuisance. It could only be abated, and therefore may be enjoined; and should it become a private nuisance, as it necessarily would without water or other sanitary arrangements and protection, the citizens of the town of Gibson or the city authorities might, and no doubt would, have it abated, at great and irreparable damage to the county and your petitioners." Petitioners prayed for injunction against carrying out the building contract, paying the warrants, using the public-road fund to pay for the land purchased, working the convicts apportioned to Glascock County on the court-house, collecting the tax of three mills on the dollar to raise a fund to erect the court-house, and locating the convict camp and barn on the tract of land referred to. These prayers were granted, and the defendants excepted.

*J. C. Newsome, E. B. Rogers,* and *I. S. Peebles Jr.,* for plaintiffs in error. *E. P. Davis,* contra.

BECK, J. (After stating the foregoing facts.)

1. Touching the subject of the mode of contracting by county authorities having charge of the roads and revenues and the public buildings of a county, it is provided in the Code of 1910, § 387, that such authorities shall cause the same to be built or repaired by letting out the contract therefor to the lowest bidder at public outcry, after advertising the letting as provided in section 388, which provides, as to the notice that should be given of the letting of a contract, that "when the work to be done is likely to amount to less than $5,000.00, the notice shall be published once a week for four weeks, and by posting notice for the same period." In the present case the contract was let out by the county authorities on the 25th day of September, 1915, under the following notice:

"Legal Notice. Bids Wanted.

"Georgia, Glascock County. Sealed proposals will be received by H. G. Sammons, county commissioner of said county, at the office of the county commissioner of said county, at 12 o'clock noon (Central time) on Saturday, September 25th, 1915, for furnish-

ing brick, lime, cement and mortar, coloring, and labor for building the walls for a new court-house for said county, according to plans and specifications now on file for inspection in the office of county commissioner of said county, at Gibson, Georgia. The right to reject any and all bids is reserved by said county commissioner. This 30th day of August, 1915.

"H. G. Sammons, County Commissioner of Glascock County, Georgia."

This notice was published only three times. It was first published on September 8, again on September 15, and then on September 22, 1915; and sealed proposals were opened and the contract made on September 25, 1915. On September 1, 1915, prior to the publication of the notice of September 8th, there was published a notice substantially the same as that which we have quoted, except that it stated that the proposals would be received "at 12 o'clock noon (Central time) on Saturday, October 25, 1915." This was a substantial variance between the notice as first published and that contained in the last three publications; and it was not a substantial compliance with the law in reference to the publication of notices of this character. The notice as first published, considered as one advertising for sealed bids to be submitted on September 25, 1915, was fatally defective. It is highly important to the public and to taxpayers of a county that the statutes which we have referred to should be complied with in the matter of making these advertisements; and this defective notice and advertisement as published was not a substantial compliance with the statute. And that being true, the contract let, after having failed to give the notice called for by the statute, was illegal and void; and the court below did not err in so holding, and in granting the restraining order as to the carrying out of this contract by the bidders and by the county authorities. It further follows, that, having held that the court-house could not be built under the contract, there was no error in enjoining the use of convict labor in erecting the contemplated building. Whether or not convict labor could be employed in erecting a court-house is not now decided.

But the court should not, under the evidence, have enjoined the collection of the tax levied for the purpose of raising a fund wherewith to build a court-house. If a court-house was necessary, the

commissioner of roads and revenues had the authority to levy a tax for the purpose of building one. Such matters are primarily in the discretion of the county authorities; and there is nothing in the evidence to show that they abused their discretion in levying a tax for the purpose of building the proposed court-house. *Dyer* v. *Erwin,* 106 *Ga.* 845 (33 S. E. 63) ; *Dyer* v. *Martin,* 132 *Ga.* 445 (64 S. E. 475).

2. The injunction granted, which in terms restrained the commissioner and public authorities from locating the place for housing the convicts, road- machinery, etc., on the tract of land purchased by the commissioner, was not authorized by the pleadings in this case. The pleadings merely complain that to locate a convict camp on this land would be a perpetual nuisance to petitioners and to the citizens of Glascock County and the town of Gibson; that it would interfere with the court sessions and with the administration of justice, and would be and remain a nuisance to the court and to petitioners and to the citizens of the town and county, and a nuisance which would be irreparable in damages, even if the county were liable in damages for maintaining a nuisance; that it could only be abated, and therefore may be enjoined, and that should it become a private nuisance, as it necessarily would without water or other sanitary arrangements and protection, the citizens of the town of Gibson or the city authorities might, and no doubt would, have it abated at great and irreparable damage to the county and petitioners. There is no attempt to show in the pleadings that there would be any special damages to petitioners; and even where it is alleged that it might become á private nuisance, and that it necessarily would become such without water or other sanitary arrangement for protection, it is alleged that the city authorities no doubt would have it abated. If a public nuisance causes special damage to an individual, in which the public does not participate, such special damage gives a right of action to the individual. Civil Code, § 4455. But there is no allegation, even in the most general terms, of any special damage to any individual among the plaintiffs, in which the public would not participate. A court of equity will not grant an injunction at the instance of one or more private citizens to enjoin a public nuisance, no private injury actually accruing or threatened being alleged. Where the nuisance is purely a public one, it can

only be restrained by the public on information filed by a public officer. *Coast Line Railroad Co.* v. *Cohen,* 50 *Ga.* 451. "Private citizens can not generally interfere to have a public nuisance enjoined, but the petition must proceed for the public on information filed by the solicitor-general of the circuit." Civil Code, § 5330.

3. In the petition a somewhat lengthy history of the way in which the town of Gibson acquired the "public square" in that town is given. It appears, however, to be given merely as a part of the history of the town; for the petitioners distinctly allege that they do not ask any injunction to restrain the county authorities from selling the land constituting the public square, and they do not seek an adjudication concerning the title thereto. They say in the petition that if it should become necessary to prevent the sale of the public square, they will file a separate suit. We are of the opinion, therefore, that the court was not authorized, under these pleadings, to adjudicate that the court-house square or public square was not an asset of the county and could not be sold.

4. The court properly enjoined the payment of the warrant given to W. D. Allen in payment of a part of the purchase-price of the lot upon which the contemplated court-house is to be built, as this was made payable out of the public-road fund; whereas such fund is to be used and expended only for the purposes set forth in § 696 of the Civil Code, relating to the county tax for roads, the purchase of a lot upon which to build a court-house not being one of the purposes specified in that section.

5. There was evidence authorizing the court to find that the issuance of these warrants was an attempt to create a debt of the county, without being authorized by a vote of the electors of the county. The mere fact that these warrants were made payable on January 1, 1916, that is, in the year subsequent to their issuance, does not necessarily show the creation of a debt; but there was evidence authorizing the court to find that the issuance of these warrants, which are payable out of the general fund, could not be discharged out of the money for the raising of which provision had been made by the tax levy for the year 1915, that is, the year in which they were issued; and that all the money coming in from the tax levy for the year 1915, not including the levy for the raising of money for the building of the court-house, would be ex-

hausted by other legal demands against the county, and there would not be sufficient money provided during the year 1915 to discharge these warrants now under consideration. Consequently the court did not err in enjoining the payment of these warrants by the treasurer of the county.

*Judgment affirmed in part, and reversed in part. All the Justices concur.*