No. 22,584.

WILBERT H. FULLER, doing business as THE FULLER REAL ES-
TATE EXCHANGE, *Appellant*, v. CHARLES A. PRESTON and
LILLIAN B. PRESTON, *Appellees*.

### SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENT — *Purchaser Produced* — *"Option Contract" En-
tered Into—Right to Commissions.* Where a broker who has been em-
ployed to find a purchaser for real estate produces a prospect with
whom the owner enters into a contract which otherwise would amount
to one for a sale, its character as such is not necessarily lost, and the
right to a commission defeated, by the mere fact that it reserves to
the proposed buyer the right to decline to complete the purchase, the
owner in that event to retain part payments already made.

2. SAME—*"Option Contract" Between Landowner and Purchaser Con-
stituted a Sale.* The evidence is held to show *prima facie* that a writ-
ten contract entered into by the owner of real property and a pros-
pective buyer was one for a sale, notwithstanding it described itself
as an option agreement, contained no promise on the part of the pros-
pective buyer to complete the purchase, and enabled him after an oc-
cupancy of three years to escape further liability by turning back the
property, the owner to retain all payments that had been made. Among
other circumstances regarded as justifying this view are these: The
contract included an assumption by the buyer (unqualified unless by
inference) of an existing mortgage, and of the payment of taxes and
insurance; this mortgage was given to raise money to erect a building
suitable to the buyer's needs; the buyer took possession, installed ex-
pensive machinery, and kept up the payments at least until the time
of the trial, such payments being considerably in excess of the rental
value.

3. SAME—*Amount on Which Commissions Should Be Based.* Where prop-
erty is listed with a real-estate broker for sale for a stated amount,
which includes an existing mortgage, the commission, unless for some
special reason to the contrary, should be based on a sale for that
amount. But where, in order to promote the sale, money for improv-
ing the property is raised by a mortgage executed by the owner and
guranteed by the buyer, who assumes its payment, the commission
should not be increased on that account unless an agreement to that
effect may be implied from other circumstances.

Appeal from Sedgwick district court, division No. 1;
RICHARD E. BIRD, judge. Opinion filed July 10, 1920. Re-
versed.

*O. A. Keach,* of Wichita, for the appellant.

*E. L. Foulke,* of Wichita, for the appellees.

Fuller v. Preston.

The opinion of the court was delivered by

MASON, J.: Wilbert H. Fuller sued Charles A. and Lillian B. Preston for a real-estate broker's commission of $325.87, claimed to have been earned by his having found them a purchaser for property listed with him for that purpose. A demurrer to his evidence was sustained, and he appeals. It was sufficiently shown that he was employed to find a buyer and that through his procurement negotiations were entered into between the defendants and the Coca-Cola Bottling Company, a corporation, which culminated in a written agreement in relation to the property. The vital controversy is whether the contract was one for a sale, as contended by the plaintiff, or was a mere grant to the corporation of an option to purchase, coupled with a lease for not more than three years, as the defendants assert.

The defendants suggest that the plaintiff did not try to negotiate a sale—that his efforts were directed wholly to the leasing of the property. Some of the evidence perhaps had a tendency to sustain this view. But although no testimony was introduced except in behalf of the plaintiff he was not absolutely bound by any of it excepting that of the agent who represented him in the transaction. This agent testified that the secretary of the corporation first talked with him about buying the property; that "the negotiations were dependent upon his buying the property. They were not leasing the property then. . . . About the second or third conversation between him [the secretary] and the witness they talked about buying defendants' property." It appeared that in order to render the premises suitable for the use of the corporation a considerable sum would have to be expended in completing a building thereon. The abstract shows this evidence of the plaintiff's agent:

"The witness talked with the Coca-Cola Bottling Company about the $12,500.00 price as a price that they would be willing to pay, provided they could get satisfactory terms for payment, and they said the price would be satisfactory, provided the building was finished to meet their requirements and suitable terms [for payment] could be arranged.

. . . . . . . . . . . .

"Mr. Jeffords [the secretary] stated in this connection that they were not in position at that time to pay a suitable amount of cash nor would

they be for several years; that they were putting in a large amount of machinery in the building, which would take a lot of money to clear up, and they could only meet good, substantial monthly payments and the final payment at the end of three or four years. The amount of this final payment would be dependent entirely on the amount of the loan obtained. Actual figures could not be given by Mr. Jeffords because the loan might eventually be $6,500.00 or $7,500.00, or might be $8,500.00."

To take care of an existing mortgage of $1,000 and to provide a fund for completing the building referred to, the defendants borrowed $8,325 from a building and loan association, which was used for that purpose, the Coca-Cola company guaranteeing the payment of the note. The defendants executed a warranty deed for the property to the Coca-Cola company and deposited it with the building and loan association together with the written contract already referred to, the deed to be delivered upon the payment of the $3,500 mentioned in the contract, which read as follows:

"OPTION AGREEMENT.

"*Lillian B. Preston & Wf. to Coca-Cola Bottling Company.*

"For and in consideration of the sum of three hundred and no-100 dollars ($300.00) to us paid, receipt of which is hereby acknowledged, we Lillian B. Preston and Charles A. Preston, wife and husband, hereby grant unto the Coca-Cola Bottling Company, of Wichita, Kansas, a corporation organized and existing under the laws of said state, an option to purchase the following described real estate situated in Sedgwick county, state of Kansas, to wit: Lots ten and twelve on Washington avenue, in Block "B" English's Subdivision to the city of Wichita, upon the following terms: Thirty-five hundred dollars ($3,500) in cash, on or before the first day of May, A. D. 1921, together with interest thereon at the rate of six per cent per annum from this date and the payment of all taxes and insurance on said premises as the same mature.

"If the said sum of thirty-five hundred dollars ($3,500) together with interest, taxes and insurance, as aforesaid, is paid by said, The Coca-Cola Bottling Co., Inc., of Wichita, Kansas, the undersigned will deliver to the said The Coca-Cola Bottling Company a warranty deed to said property, properly executed, furnishing at that time an abstract showing good merchantable title except as herein provided, which deed shall be executed as of this date, by the undersigned, and deposited with this contract in escrow in The *The* Wichita Perpetual Building and Loan Association to be delivered to said The Coca-Cola Bottling Company, upon the payment of said thirty-five hundred dollars as aforesaid.

"It is expressly understood and agreed that time is the essence of this option, and should the said The Coca-Cola Bottling Company fail for the period of sixty (60) days to comply with the terms of this option at the

time and in the manner specified herein, then said option shall cease and determine.

"It is expressly understood, as a part of this Option Agreement and coincident thereto, that said Lillian B. Preston and husband are to borrow the sum of eight thousand two hundred thirty-five dollars ($8,235) from The Wichita Perpetual Building and Loan Association, of Wichita, Kansas, on a mortgage to be executed by them against said premises, one thousand dollars of the same to be used to retire an existing mortgage against said premises in favor of one W. H. Good, and the balance to be used in completing improvements on said property in accordance with the present agreement of the parties hereto, according to plans and specifications drawn up by J. R. Rutledge, architect and builder, Wichita, Kansas, said improvements to cost the sum of seven thousand two hundred thirty-five dollars ($7,235).

"It is further agreed by said The Coca-Cola Bottling Company that it shall assume and pay all payments due to The Wichita Perpetual Building and Loan Association for said moneys borrowed from said Association by said grantors, for the purpose above provided, and when such payments with dividends and interest thereon aggregate the sum of eight thousand two hundred thirty-five dollars ($8,235) the said Lillian B. Preston hereby agrees that same shall be credited on said mortgage to The Wichita Perpetual Building and Loan Association and that said mortgage is thereupon to be released of record leaving title to said premises in The Coca-Cola Bottling Company, Inc., of Wichita, Kansas.

"Insurance shall be so made as to protect the interests of the parties hereto.

"Dated this 1st day of March, A. D. 1918."

The Coca-Cola company took possession of the property, installed expensive machinery in the building, and at the time of the trial, March 31, 1919, had made all the payments on the mortgage as they matured.

1. The defendants rely upon the rule laid down in many decisions that a commission for finding a purchaser for property on certain terms is not earned by the broker's production of a customer with whom the owner enters into a contract giving an option to buy it on such terms (*Aigler v. Land Co.*, 51 Kan. 718, 33 Pac. 593), even where part payments are made which are to be retained by the owner in case the customer concludes not to buy. (4 R. C. L. 315, 9 C. J. 604, note 72 and corresponding text; James in Option Contracts, § 105. See, also, 9 C. J. 576, note 23.) To this general doctrine we take no exception, but we think some qualification is required to the statement that has sometimes been made in the course

of discussions of the subject, to the effect that a contract cannot be regarded as one for a sale, as distinguished from an option, unless the owner can absolutely require the proposed buyer to take the property, or at all events to pay for it in full. While a plausible argument can be made in support of the literal and technical accuracy of that test, we do not think that as a practical matter it should be accepted as infallible. If a broker is employed to find a purchaser for property and produces a prospect with whom the owner enters into a contract which otherwise would amount to one for a sale, it is the view of this court that his right to his full commission would not necessarily be defeated by the mere fact that there is reserved to the proposed buyer the privilege to decline to complete the purchase, the owner in that event to be compensated by the retention of the portion of the purchase price already paid. This view was announced and applied in *Davis v. Roseberry*, 95 Kan. 411, 148 Pac. 629.

2. We regard the reasoning of that decision as requiring us to hold that the contract now under consideration was such as to entitle the plaintiff to his commission. On its face— with respect to its phraseology— that contract lent itself more readily than this to interpretation as an agreement for a sale, but here there are a number of special circumstances favoring such construction. The fact that in the title and body of the contract it is described as an agreement for an option might in a doubtful case be of some aid in its interpretation, but is not conclusive as to its real nature, which must be determined by the character of the legal rights of the parties which result from their entering into it. The record of the proceedings of a meeting of the directors of the Coca-Cola company on February 20, 1918, included an entry as follows:

"Thereupon the meeting was advised that the officers of the company had entered into negotiations with Charles A. Preston for the erection and purchasing of property for the use of the company; and that suitable property could be purchased upon payments of approximately one hundred ($140) dollars per month, such payments to be arranged by the guaranteeing to the Wichita Perpetual Building and Loan Association of a mortgage on this property in the sum of eight thousand two hundred thirty-five ($8,235) dollars, it being understood that this amount would take care of the cost of the improvements upon the property, and the price which would be paid for the lots could be taken care of by an option contract due in about twenty-seven (27) months.

After due consideration the following resolution was unanimously adopted:

"*Resolved,* That the Officers of the Company are hereby authorized and directed to enter into a contract ·with Chas. A. Preston and wife for the purchase of the property described as lots 10 and 12 on South Washington avenue, English's Subdivision of the city of Wichita, Kansas. As a part of the plan of purchase, the Officers of the Company are hereby authorized and directed to guarantee the payment of the first mortgage in the amount of eight thousand two hundred thirty-five ($8,235) dollars which is to be placed against the above-described property, the terms of such guarantee and the manner of the carrying out of the same to be in such form as the Wichita Perpetual Building and Loan Association requires.

"The officers of the company for the protection of this company are to obtain an option contract with the said Charles A. Preston and his wife, Lillian B. Preston, by which· the company is to have the right to obtain title to this property subject to ·this first mortgage by the payment of the sum of thirty-five hundred ($3,500) dollars with interest at 6% payable any time within twenty-seven months from the' date of the execution of the contract."

Of course the language authorizing a purchase is not controlling, but it gives room for an inference that the word "option" was used as a convenient term to signify a reservation by the company of the privilege of declining to complete the purchase after the contract had been partly carried out.

The hypothesis that the contract was regarded as one for a sale, with the reservation of a right in. the buyer to decline to complete it, finds further support in its provisions that the company should "assume and pay all payments due to the building and loan association," this not being limited to the three-year period or conditional upon the exercise of the so-called option to buy, and that "when such payments with dividends and interest thereon aggregate the sum of eight thousand two hundred thirty-five dollars ($8,235) the said Lillian B. Preston hereby agrees that same shall be credited on said mortgage to the Wichita Perpetual Building and Loan Association, and that said mortgage is thereupon to be released of record leaving title to said premises in the Coca-Cola Bottling Company, Inc., of Wichita, Kansas."

The defendants advance the theory that the payments on the building and loan company's mortgage must be regarded as rent. This is untenable because there was evidence that when a lease had been under discussion a rental of $90 a month had

been agreed upon, while the payments on the mortgage amounted to $31.85 a week—a difference too large to be disregarded.

The contract requires some interpretation. It does not expressly refer to an occupancy of the property by the Coca-Cola company prior to the delivery of the deed, but that was obviously contemplated. Although the agreement of the company to make payments to the building and loan association until the mortgage was satisfied was not in terms restricted, there is room to imply that if at the end of three years it elected to surrender the property it would be released from further liability, and would have no claim for the return of any money; that will be assumed to be the meaning. The evidence then was sufficient to warrant a finding that the contract amounted to this: The company was to occupy the property for three years, paying in that time $31.85 a week, in all $4,965.60, or $1,725.60 more than the rent would be worth. It was also to pay the taxes and insurance. At any time within the three years it could obtain the deed by paying $3,500, remaining responsible for the mortgage. At the end of that period it could if it saw fit relieve itself of further liability by vacating the property, thereby losing what it had put into it in excess of the value of the rent. We regard such a contract as essentially similar to that passed upon in *Davis v. Roseberry,* 95 Kan. 411, 148 Pac. 629, already cited. There the prospective buyer formally agreed to take the property at the stated price, but with a distinct reservation of the right to be released from this obligation by forfeiting the sum of $500 which he had deposited as a part payment. This proviso was characterized as an attempt to liquidate the owner's damages in case the buyer should not complete the purchase—an agreement in advance as to the equivalent he was willing to accept. Inasmuch as the assumption of the obligation to buy, and the right to be relieved thereof by sacrificing the $500 paid, were contained in the same instrument, there was no actual breach of the contract—the buyer in effect bound himself to do one or the other of two things which the owner had agreed to treat as of equal value—complete the payment of the stipulated price, or forfeit what he had already paid. In the present case the buyer was likewise bound to do one of two things

Fuller v. Preston.

within three years—either complete the purchase of the property by paying $3,500, or lose all that he had put into it in excess of rent, such loss including about $575 a year besides taxes and interest.  There were here present, moreover, the circumstances, to which reference has already been made—the change of possession, the installation of machinery, the payment of taxes and insurance, the purposes of the buyer as expressed in its record—indicating that the transaction for practical purposes constituted a sale on time with a right in the buyer to be relieved from further liability by turning the property back.

In an elaborate note entitled "Instrument for purchase of land as a contract or an option"  (3 A. L. R. 576) the difficulty of classifying every agreement according to some hard and fast rule is recognized in these words:

"Although the distinguishing characteristics of contracts for the sale of land, and contracts creating merely an option to purchase, are well known, it is unfortunately true that in a great number of cases there are no earmarks by which the type of contract can be immediately recognized, and the presence of such characteristics cannot be definitely determined until the contract has received judicial construction."

Of the many cases collected and classified in the note few seem based upon facts sufficiently like those here involved to make their citation desirable.  In *Moss & Raley v. Wren*, 102 Texas 567, rehearing 569, the court reached a conclusion contrary to that arrived at in the Kansas case already discussed—*Davis v. Roseberry*, 95 Kan. 411, 148 Pac. 629.  *Wright v. Suydam*, 72 Wash. 587, contains language tending to support the views expressed in the Davis-Roseberry case, but there the controversy was not whether an agent was entitled to a commission, but whether the vendee could enforce specific performance.

3. The amount of the plaintiff's compensation under the evidence was to be (in accordance with custom) 5 per cent of the first $1,000 of the price and 2½ on the remainder.  He asks a recovery on the basis of a sale for $12,035.  His evidence was that the property was placed in his hands for sale for $4,500, which price included the $1,000 mortgage.  It is said that "commissions must be estimated on the whole value of the property without regard to incumbrances, in the absence of a specific agreement to the contrary."  (9 C. J. 582.)  Whether

or not that rule is accepted, we think the commission should be computed on $4,500. The listing here appears to have been for a sale of the property clear, for that amount, and not for its sale for $3,500, subject to the $1,000 mortgage. We regard the sale contracted for as one substantially for $4,500, the old mortgage having been paid off out of the proceeds of the new one. We do not think, however, the building and loan mortgage (in excess of the thousand dollars) should be included in the amount on which a commission should be computed. That mortgage was given as a part of the means by which the sale was to be effected—it was for the benefit of the purchasing company rather than of the seller, except as it helped to promote the sale.

The judgment is reversed, and the cause is remanded for further proceedings in accordance herewith.