Lorts v. Herbert.

---

No. 24,284.

GEORGE LORTS, *Appellee,* v. O. A. HERBERT, *Appellant.*

SYLLABUS BY THE COURT.

REAL-ESTATE BROKER—*Employed to Sell Oil and Gas Lease—Purchaser Produced—Contract Made—Commission Earned.* Where a real-estate broker was employed to sell a gas and oil lease on a farm, his commission to be all he could get above a stipulated price, and he produced a purchaser who made a contract with the owner for the purchase of the lease at a price named by the broker and on terms agreed to by vendor and vendee, such transaction was a sale and the broker's commission is due thereon; nor was such transaction reduced to a mere option because the vendor's written lease and the purchaser's cash payment were deposited with a bank upon an understanding that the vendor should receive the cash payment when the abstract was approved, and that if the abstract were not approved the money should be returned to the purchaser, nor because of the further understanding that if the balance of the purchase price were not paid within the time allowed the lease should be surrendered to the vendor.

Appeal from Harvey district court; WILLIAM G. FAIRCHILD, judge. Opinion filed March 10, 1923. Affirmed.

*R. L. King,* and *Roscoe King,* both of Marion, for the appellant.

*Ralph T. O'Neil, A. M. Harvey,* both of Topeka, *W. H. Carpenter,* and *W. R. Carpenter,* both of Marion, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for a commission on the sale of an oil and gas lease on defendant's 80 acres of land.

The terms and authority upon which the plaintiff was employed, read:

"I agree to give Geo. Lorts authority to sell oil and gas lease on my farm . . .

"I also agree to give Geo. Lorts as his commission for the sale, . . . all of the amt. he gets over $250 [per acre] on drilling contract . . .

"This man name is D. D. Alderman, of Topeka. Ks.      O. A. HERBERT."

Pursuant thereto plaintiff priced the lease to Alderman at $300 per acre, and upon plaintiff's initiative Alderman and defendant were brought together and they entered into a contract for the lease of the premises for oil and gas development. The price exacted for the lease was $300 per acre, and the terms of payment were $5,000 in cash and the balance, $19,000, was to be paid in 90 days. The lease and Alderman's check for the $5,000 were deposited in a bank in Peabody. The bank executed in duplicate an acknowledgment of receipt of the lease and the receipt of Alderman's $5,000, and of an understanding that upon approval of the abstract of title by named attorneys the $5,000 should be paid to defendant, and on the further payment of the balance to defendant's credit within 90 days the lease was to be delivered to Alderman, and if the latter failed to pay the $19,000 within the time the lease was to be returned to defendant, and upon the further understanding that if the abstract of title was incomplete the $5,000 should at the option of the purchaser be returned to him and the lease returned to the defendant. A copy of this acknowledgment was given to defendant and a copy to Alderman. The abstract was duly approved and defendant received the $5,000. Later, defendant gave the bank written instructions that he had extended the time for an additional 90 days. But Alderman never paid the balance of the purchase price; so defendant refused to pay plaintiff the agreed commission, and this lawsuit followed.

Judgment was entered for plaintiff and defendant appeals. He contends that his bargain with Alderman did not amount to more than an option, and that the escrow acknowledgment of the bank and the deposit of the lease and the $5,000 check therewith establish that contention. We cannot interpret the transaction in that light. The escrow set down the bank's understanding of its duties; it did not undertake to set down the terms of the contract between Alderman and defendant. It was not signed by the parties. The terms of that contract are to be gleaned from all the evidence, including the testimony of the witnesses. Moreover, neither plaintiff's contract of employment to find a buyer nor the transaction between buyer and seller pursuant thereto have any of the earmarks of an

option. An option is a unilateral obligation of a proposing vendor and the corresponding discretionary right of a prospective vendee wherein the former grants to the latter the privilege of purchasing certain property within a specific time and upon specified terms. A plethora of textbook definitions are all to this effect. (3 Bouvier's Law Dict. Rawle's 3d Rev. 2421; 9 Cyc. 286; 35 Cyc. 56; 6 Words and Phrases, 5000.)

And see *Chadsey v. Condley*, 62 Kan. 853, 62 Pac. 663, and quotation from *Ide v. Leiser*, 10 Mont. 5, in *Davis v. Roseberry*, 95 Kan. 411, 414, 415, 148 Pac. 629.

But here there was an outright sale of the lease for $24,000— $5,000 in cash and the balance in 90 days. That the parties stipulated as to the consequences which would flow from Alderman's default of final payment, or from defendant's failure to furnish satisfactory abstract, detracted not at all from the consummation of the contract of sale. When that contract was made, plaintiff's commission was earned. The terms of payment agreed to by buyer and seller, and the question whether those terms were subsequently complied with or breached, and the consequences of any breach, were matters which did not affect the rights of plaintiff. The present case is analogous to *Davis v. Roseberry*, 95 Kan. 411, 148 Pac. 629, and *Fuller v. Preston*, 107 Kan. 250, 191 Pac. 493; and is unlike *Aigler v. Land Co.*, 51 Kan. 718, 33 Pac. 593, in which the real-estate agent was denied a commission on the price specified in a mere option to purchase, which was never construed or intended to be more than an option, and where the option privilege never ripened into a purchase and sale. Nor is this case like *Dwyer v. Raborn*, 6 Wash. 213, 33 Pac. 350, cited by appellant, where land was placed in the hands of a real-estate broker for sale on certain terms, and the broker introduced a prospective purchaser to the owner, but the purchaser refused to buy on such terms although he did take an option on the property for 60 days. In that case a divided court held that the owner was not liable for a broker's commission.

The record discloses no error and the judgment is affirmed.