## NORTHSIDE LUMBER & BLDG. CO. v. NEAL. (No. 12204.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 30, 1929.

Kilgore, Rogers & Thornton, of Wichita Falls, for appellant.

Allred & Allred, of Wichita Falls, for appellee.

CONNER, C. J. The appellant lumber and building company appeals from a judgment against it in favor of the appellee, Mrs. Le Roy Neal, rendered in the county court of Wichita county, on an appeal from the justice court, for the sum of $150. The award was for commissions due Mrs. Neal upon a contract with the appellant company providing for the sale of lots 23 and 24, block 14, of an addition to the city of Wichita Falls.

The trial court's findings of fact, filed at the request of appellee, show that in September, 1926, Mrs. Neal was engaged in the real estate business, and that through duly authorized agents the appellant company listed with her the lots mentioned for sale. They were to be sold to some person who would buy lumber from the lumber company for the purpose of erecting houses on said lots. The appellee procured one W. L. Leach and introduced him to an authorized officer of the company, and, after some time spent in negotiations with Leach, the appellant company and Leach entered into a written contract of sale slightly different from those originally authorized. Omitting formal and unnecessary parts, the contract reads:

"Whereas, Northside Lumber & Building Company agrees to sell and W. L. Leach agrees to buy the following described property, known as lots twenty-three (23) and twenty-four (24) of block fourteen (14) of the Westmoreland Park addition to the city of Wichita Falls, Texas, in the following manner, to wit:

"Party of the first part hereby agrees to sell above described property for the sum of fifteen hundred dollars ($1,500.00) per lot and to aid and assist party of the second part with the construction of houses according to plans agreed upon. Upon completion of said houses party of the first part hereby agrees to furnish party of the second part with good

and merchantable title and abstract covering said property.

"For and in consideration of the above, party of the second part hereby gives two (2) sixty (60) days notes in amount of two hundred dollars ($200.00) each, covering these lots, said notes being payable at maturity and being in form of good faith and option on said lots.

"It is agreed and understood that upon completion and sale of these houses that party of the first part is to receive total payment in cash for their lots, material and cash advanced to said party of the second part, necessary for the erection of said houses.

"Witness our hands this 1st day of September, A. D. 1926."

The court further found that appellant company had agreed to pay the plaintiff a commission of 5 per cent. if she would bring a buyer on the terms authorized in the written contract, and that, immediately after the execution of the written contract, Leach "exercised his option" (as the court expressed it), and began the erection of houses on the lots, and continued the building of the same and practically and substantially completed the same, finishing all but "the plumbing fixtures and light fixtures and a few odds and ends around the house." Leach furnished the workmen, and himself supervised the building of the houses. The defendant company furnished the lumber and materials for the building of such houses, charging the same to Leach. When the houses were completed, except as to the light and plumbing fixtures, etc., Leach quit the work, and the defendant company still have and hold the houses and lots. The reason Leach abandoned the work is not disclosed, except that the secretary-treasurer of the company testified to an oral understanding to the effect that Leach was unable to pay off in cash the two notes for $200 each described in the contract. The company still holds the two notes, for $200 each, but has never sued upon the same. The testimony tended to show that, after they accepted the notes, they investigated the financial condition of Leach and found him to be insolvent. The court further found that the appellee was the procuring cause of the execution of the contract on terms authorized by the company, and that the usual and customary fee for services of the kind was 5 per cent., which percentage was agreed upon by the parties.

■ Appellant first insists that the appellee declared upon a quantum meruit for the reasonable value of the services, and that the proof showed and the trial court found as a fact that the parties had an express contract which was not pleaded, and therefore that there is a fatal variance between appellee's pleading and the proof. There are no written pleadings in the record. The basis of appellant's contention of the variance rests up-

on the assumption that the citation issued and served by the justice court shows that appellee sought to recover on the theory of reasonable compensation only. It has been repeatedly held in this state that the citation in the justice court is no part of the plaintiff's pleadings, and cannot be looked to in aid of the record in determining the issues presented in the county court. See Alvis v. John G. Harris Hdwe. & Furn. Co. (Tex. Civ. App.) 218 S. W. 538, 540; Wooley v. Corley, 57 Tex. Civ. App. 229, 121 S. W. 1139; Chicago, R. I. & G. Ry. Co. v. Gladish (Tex. Civ. App.) 175 S. W. 863, 864.

■ Moreover, the court's findings show not only that the 5 per cent. was agreed upon as appellee's commission, but also that the reasonable value of the services rendered by plaintiff was 5 per cent. Hence the point mentioned, at all events, would seem to be wholly immaterial.

Appellant further insists that the judgment is erroneous in that the court's findings and evidence show that the contract entered into between the appellant company and the appellee did not constitute a sale of the lots for which appellee would be entitled to commissions, but in legal effect but an option.

■ An option is a mere offer to sell, which, if founded upon a consideration, cannot be withdrawn until the expiration of the period for which it was granted and to which it was extended. By it the offeree is not bound to purchase. He may or may not, as he chooses, accept the offer. If he fails to accept the offer, his only liability is that of a loss of the consideration paid for the option. The option, however, if properly accepted, then becomes a binding contract. See Western Securities Co. v. Atlee, 168 Iowa, 650, 151 N. W. 56; Lorts v. Herbert, 113 Kan. 113, 213 P. 811; Gompert v. Frost, 188 Iowa, 1039, 177 N. W. 71.

■■ We are of the opinion that the contention that the written contract entered into between the appellant company and Leach was only an option must be overruled. The contract in express terms is not unilateral, but bilateral. By it the appellant company, in express terms and plain words, agreed to sell, and Leach in terms equally plain agreed to buy. Moreover, if the contrary view of the contract should be adopted, the findings and evidence show without dispute that Leach accepted the option, if it be so termed, and hence the contract became binding and enforceable. The mere fact that Leach failed to wholly complete his contract cannot be given the effect of denying appellee the right to recover the specified commission. See Karr v. Stevens (Tex. Civ. App.) 297 S. W. 287, and cases therein cited.

We conclude that the trial court's conclusions of fact and law should be adopted and the judgment affirmed.