E. G. ROBERTSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28867.  Promulgated April 9, 1930.

*Harry W. Hart, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

536

OPINION.

LANSDON : The respondent contends that the instruments used by the petitioner in his real estate transactions were plain leases, coupled with options to purchase the property described therein; and that, for this reason, the payments in controversy which were made under them must be regarded as income from leased property and for the year received. The petitioner contends that these instruments, in view of the purposes for which they were employed and the prior understandings which formed the inducement for their execution, must be regarded as contracts of sale for the property described therein, and that collections thereunder, otherwise called rent, except in cases of their forfeiture through default or abandonment and to the extent of which they are interest, must be regarded as payments upon the purchase price.

If the issues here could be determined by a narrow construction of the bare contract in evidence, the decision would be simple, since we consider the law too well settled to admit of an extension of its provisions beyond their plain written terms. Such instruments are lease-option contracts and not contracts for sale of real estate. *Caldwell* v. *Fraizer*, 65 Kans. 24; 68 Pac. 1076; *Bras.* v. *Sheffield*, 49 Kans. 702; 31 Pac. 306. The question, however, as to what constitutes taxable income is one of fact and can not be determined alone by a mere regard to the form of instrument under which it was collected. It is the character of the transaction which produced the funds collected, as governed by the intent of the parties in carrying it out, that must determine the character of such funds in the hands of the taxpayer.

In the cases involved here, if the parties to the lease-option contracts, by their acts, intended in each instance to effect nothing more than a lease of the properties described to the lessee named for the period designated, with no thought of committing themselves to a sale, except as provided for in the option feature of the contract, then their relationship throughout was one of landlord and tenant and the payments were rent under the lease. If, however, as claimed by the petitioner, a verbal agreement of sale of the property involved preceded the execution of each of these contracts, and the parties in so executing and carrying them out at all times intended to accomplish a sale of the property described in the lease from the lessor to the lessee, and the lessor and lessees intended that the payments made by the latter to the former under the rental provisions of the leases should be credited upon the purchase price of such property, then such payments must be regarded as purchase-price payments and only so much thereof as represents profit to the lessor, when ascertained, may be attributed to taxable income.

The record here shows that the petitioner, who for many years has been engaged in real estate operations, acquired each of the properties involved in these considerations for the purpose of development and sale on a deferred payment plan to persons of moderate circumstances. That because of the small advance payments required of his buyers upon their taking possession of the property, and owing to the liberal provisions of the Kansas redemption laws in favor of such buyers once in possession, the petitioner considered that the plan most commonly employed in selling homes on the installment plan failed to afford him adequate protection against defaulting purchasers, and for this reason he brought into use the lease-option contract system as shown. None of these leases were executed by the petitioner except in favor of parties who had first agreed to purchase the property involved and in accordance with terms of payments on the purchase price in amounts and at dates as set forth in the lease under the rental and option provisions. In other words, a bona fide agreement of sale was in fact first made between the parties, complete in every respect except for the writing. Under such circumstances, the sale was effective without the writing upon delivery of possession of the property, but under the Kansas redemption laws such possession could be held by the purchaser for a period of eighteen months, without further payments, and it was to prevent such an adverse holding that the system here shown was called into play.

We think the record here supports the hypothesis last suggested. The only evidence as to the intent of the parties in entering into the contracts under consideration is the testimony of the petitioner,

who states that in each and every case a sale of the property affected was intended, and that deeds were invariably issued conveying the same to the lessee named upon a full compliance with the terms. He also stated that, although he carried on a regular rental business of other properties, none of the properties involved in the transactions under consideration were either acquired, developed, or held by him except for purposes of sale, and that in effecting these sales, with the consent of the purchasers, the lease-option form was employed because it would enable him more easily to recover possession of the property in case of default. This testimony is consistent with other attending circumstances and, being in no way contradicted, must be accepted as proof of the intent of the parties in carrying out the transactions which gave rise to the revenues in dispute. The intent of the parties to these transactions being to accomplish sales, we think the law must give such effect to them regardless of the forms employed. In thus interpreting these several transactions, we make no attempt to ignore or vary the terms of the written instruments or to declare them to be something different from what they purport to be, but since such instruments evidence only a part of the agreements between the parties, we take notice of the objects sought to be accomplished and the agreements which induced their execution, *Peugh* v. *Davis*, 96 U. S. 332; *Morris* v. *Nixon*, 1 How. 118; *Jackson* v. *Lawrence*, 117 U. S. 679. In the transactions between the petitioner and his clients they were selling and purchasing real property and we must so hold, *Russell* v. *Southard*, 12 How. 139, and although in the interim between the signing of the contract and the final payment under the option, their relationship was that of landlord and tenants, yet, by virtue of the options, these purchasing tenants acquired valuable rights over and above a leasehold estate in the properties. These interests included the exclusive right to acquire complete ownership of the property and to take credit upon the agreed purchase price for all of the payments made by them under the rental clauses in said contracts. *Davis* v. *Rosenberg*, 95 Kans. 411; 148 Pac. 629; *Clark* v. *Coyle*, 141 Ga. 702; 82 S. E. 21; *Furman* v. *Smarr*, 89 S. E. 774; *Feisthamel* v. *Campbell*, 55 Calif. App. 774; 205 Pac. 25; *Gutierrez Del Assoys* v. *Graham*, 227 U. S., 181. Correspondingly, by these contracts the petitioner parted with the interests acquired by his tenants and, in each case, was bound to hold all payments in excess of interest charges made by them for credit upon the agreed purchase price of the property. It is true that in case of default or abandonment of any of these contracts by the purchasing tenants, all payments made by them became income to the petitioner, but these are matters entirely within the control of the tenant and not the petitioner, and since the record here shows

that no such contingencies have affected the status of any part of the funds in dispute, we must treat them as intended by the parties.

Our decision that the transactions here involved were, in fact, sales of real estate leaves open the question as to the correct rule for determining and taxing the income resulting therefrom. There are two well established methods for computing the taxes on income included in payments received from real estate sales, viz., the completed sales and installment bases. The method proposed by the petitioner conforms to neither, but it is contended that it is the only way in which the true income and tax liability resulting from the transaction here involved can be computed. We are not convinced that this is true. In our opinion the deals in question were sales of real estate on the installment plan, and the income realized therefrom should be reported on the installment basis.

Reviewed by the Board.

*Decision will be entered under Rule 50.*