No. 23,886.

THE KENDALL LAND COMPANY, *Appellee*, v. C. G. EDDY, *Appellee*, et al. (C. W. TRICKETT, *Appellant*).

SYLLABUS BY THE COURT.

1. ORAL CONTRACT—*Sale of Land to Unknown Purchaser—Sale Completed—Binding Contract.* An oral contract may be made between the owner of land and another representing a purchaser, which, if recognized by the parties interested and treated as a sale by an actual transfer, or by an agreement in writing binding the parties, will constitute a sale, although at the time of the oral agreement the person selling may have no knowledge of the name of the person purchasing.

2. SAME—*Land Listed with Agent for Sale—Independent Sale Made by Owner to Unknown Purchaser—Instructions.* Before being notified that his agent had arranged a sale of his land, the owner received an offer for the land by telephone from an agent in another town, and orally agreed upon terms of sale; the sale was confirmed by letter the following day and was afterwards consummated on the same terms. At the time of the conversation over the telephone the owner did not know the name of the purchaser. *Held,* that instructions were erroneous which charged that in order to make an oral arrangement of that kind binding the contract when carried later into effect, the party selling must know the name of the party wishing to purchase.

Appeal from Thomas district court; CHARLES I. SPARKS, judge. Opinion filed July 8, 1922. Reversed.

*E. E. Kite,* of St. Francis, for the appellant.

*E. H. Benson,* of Colby, for appellee C. G. Eddy.

The opinion of the court was delivered by

PORTER, J.: The case was started by the Kendall Land Company, a partnership of Colby, to recover the proceeds of wheat harvested on certain lands. C. W. Trickett and C. G. Eddy were made defendants. Eddy filed a cross-petition against Trickett claiming to be entitled to an agent's commission for the sale of the lands to the plaintiff. Trickett joined issues on the cross-petition and there was a trial and verdict in favor of Eddy. Trickett appeals.

Trickett owned two sections of land in Thomas county, one of which he had listed for sale with Eddy. The only question is whether he sold the land before he received notice from Eddy that the latter had made a sale. There is no conflict in the evidence on the essential facts. On the afternoon of April 14, Eddy had ar-

Land Co. v. Eddy.

ranged for a sale of the land and tried to communicate from Colby by telephone with Trickett at Bird City but failed, for the reason that Trickett was attending a public sale about ten miles in the country. Eddy left word at Trickett's bank with an employee to inform Trickett when he returned that he had sold the land. He did not succeed in getting into communication with Trickett until about ten o'clock.

Garvey, who was one of the partners doing business as the Kendall Land Company, called Trickett by telephone about four o'clock in the afternoon. The talk related to Trickett's price on the land, and the commission that would be paid. Trickett testified that he could not hear very well, and that whoever was talking with him said that he would call up later when he got home. This part of the message was repeated to him by central. Trickett went direct from the sale to his home in Bird City. About seven o'clock in the evening, Garvey called Trickett again. The latter understood who was talking and stated again the price and terms including the commission which he would be willing to pay. Garvey wanted to buy both sections. Trickett agreed to take a cash payment of $5,000 on the two sections and the balance October 1, with interest on the deferred payments. Garvey told him he would take the land, and he told Garvey he would consider the land sold. The following day Trickett received a letter from Garvey enclosing two checks each for $2,500 to apply on the purchase price and confirming the telephone conversation. The amount of the incumbrances was stated and Trickett was told that he might fix up contracts, or if satisfactory, he might prepare deeds, leave the grantee's name blank and send the deeds to a bank at Colby. The sale was subsequently completed in accordance with the original agreement and confirmation. Shortly after the conversation over the telephone with Garvey in which the terms of the sale were agreed upon Trickett went down to his bank. Mr. Trout, an employee in the bank was there and said to him, "I got a message from Mr. Eddy, stating that he had sold section 15 in Thomas county." Trickett replied, "It is too late, I have sold it myself." About an hour later, Eddy talked with Trickett over the telephone from Colby and said he had sold section 15. Trickett told him he was sorry but he had already sold it by wire that day.

"Q. What did Mr. Eddy say? A. He wanted to know why I had not notified him and I told him I hadn't had time to notify him as I had just sold it."

Eddy testified that when he finally got Trickett on the 'phone in the evening he informed him he had sold section 15 and asked to have the deed and abstract sent, and Trickett said, "That is too bad, I sold that land to some other parties." Eddy further testified: "I said, 'When did you sell it?' He said, 'This afternoon,' and I asked him who he sold it to and he said he had sold it some parties in Nebraska and I asked what their names were and he said he didn't remember, and I said, 'It seems funny that a man would sell twenty to twenty-five thousand dollars' worth of land and not know who he sold it to' and I said, 'Did you sell it over the phone?' and he said, 'Yes.' I said, 'You had better not involve yourself in another sale because I think my sale is first' and he said, 'It is too late now, the contracts are in the mail' and he hung up the receiver." In reply to a letter written by Eddy on April 15, insisting on closing his deal for the land, Trickett wrote the following letter:

"MR. CARL EDDIE,
        Colby, Ks.

"Dear Sir:

"I was very much surprised to get your letter you claim that you notified the Bank of the sale now I was at a sale when I got word from the Parties and excepted the deal before I heard from you. further more I did not give you a price for any definite time. I have sold to the other people which are not the one that I thought it was at first the contracts are signed and returned now.

                    Yours truly,      C. W. TRICKETT."

Garvey, who was acting for the Kendall Land Company in purchasing the land, testified that when he called Trickett at seven or eight o'clock in the evening, and inquired about the sale and the price, he told Trickett they were buying some land with a Nebraska land company; that Trickett said a Nebraska man had been given three days in which to sell this and other land, and that was the third day; that the Nebraska man's name was Williamson of Lincoln who was going to buy both sections, and Trickett wanted to sell both together. Garvey asked if he had any objections to selling the land to them, and he said he had not.

Among other instructions, the court gave one substantially as follows:

"7. . . . You are instructed that the owner of land may have an oral contract with a purchaser for the sale of land and if the substantial terms of the contract are understood by each of them, that is, the lands being sold, the price thereof and the terms of payment, the party selling *and the party buying said land,* and if it is understood between them that one party has purchased

and the other has sold said land, and it is followed up by reducing their agree-ment to writing in substantially the same terms as agreed upon orally, it would constitute such a sale as would protect the owner of the land from pay-ing an agent commission if he had made such a sale before being notified by the agent that he had found purchasers for the land."

The appellant criticizes that portion of the instruction which de-clares it essential to a valid contract that the parties shall each understand who is the party selling and who is the party buying. Complaint is also made of instruction No. 8, which reads:

"You are instructed that when parties have a conversation relating to the sale of real estate and one party does not know the name of the party wishing to purchase the same, it does not constitute a sale, but if such a conversation occurs it may throw light upon the probability or improbability of what the parties did after that, if they did anything."

We think both instructions were erroneous in this respect: An oral contract may be made between the owner of land and someone representing the proposed purchaser which, if recognized by the parties interested and treated as a sale, that is, followed up by an actual transfer of the property or by an agreement in writing binding the seller, will constitute a sale, although at the time of the oral agreement the person selling may have no knowledge of the name of the person who is purchasing the land. Every day sales of real estate are made in the same way, where the one who sells is not informed of the name of the purchaser until the deed is to be executed, and frequently at the request of the agent or of the pur-chaser the name of the grantee is omitted with an understanding that the person to whom the instrument is delivered has authority to insert the name of the grantee. Here the controlling fact is that Trickett received by telephone an offer to purchase his lands on terms satisfactory to him, which he agreed to accept. If the terms were carried out he was not concerned whether the person to whom he talked was buying it for himself, the land company, or some client of the company. A letter confirming the sale followed. The sub-stantial terms of the contract were understood by each of the negotiating parties, that is, the lands to be sold, the price and terms of payment and the party selling. This was followed up by a con-veyance in accordance with the terms as originally understood be-tween the parties. Trickett having the right to sell his lands, if he acted in good faith in doing so, it is no concern of the appellee that at the moment when Trickett agreed to sell he did not know whether

the purchaser was the Kendall Land Company or some man in Nebraska. On the undisputed facts, the court should have directed a verdict in favor of Trickett.

An abstract sufficient to present all the portions of the record, and all testimony necessary to be considered would have required not to exceed fifteen or twenty pages of printed matter. Appellant's abstract consists of seventy pages and copies in full twenty-five pages of pleadings, including the petition of the plaintiff, which is not involved in this controversy. We can discover no occasion for setting forth a copy of any of the pleadings. A copy of the journal entry recites in full the rendition of six formal verdicts with the title of the case showing the names of all the parties to the original litigation. The journal entry, the motion for a new trial and notices of appeal were unnecessary to present the question involved in this proceeding. A counter-abstract of twenty-two pages sets forth the pleadings in full a second time, reprints the journal entry, copies the verdict and notices of appeal, and the numerous exhibits which would better have been abstracted.

Under rule No. 5, the court would be justified in striking both abstracts from the files. The court is of the opinion, however, that each party should pay for his own abstract.

The judgment is reversed, and the cause remanded with directions to enter judgment in favor of Trickett.