No. 27,197.

L. A. HARTMAN and HOMER B. JENKINS, Partners doing business under the name of HARTMAN & JENKINS, *Appellees*, v. J. J. SPECK, *Appellant*.

SYLLABUS BY THE COURT.

BROKERS — *Action for Commission — Evidence*. In an action for a share of certain commissions earned by a partnership firm of real-estate agents of which plaintiff had been a member, the record examined and held that the evidence was sufficient to sustain the judgment entered in plaintiff's behalf.

Appeal from Shawnee district court, division No. 3; OTIS E. HUNGATE, judge. Opinion filed May 7, 1927. Affirmed.

*J. J. Schenck*, of Topeka, and *Tom Harley*, of Wichita, for the appellant.
*A. E. Crane, B. F. Messick* and *A. Harry Crane*, all of Topeka, for appellee L. A. Hartman.

Brokers, 9 C. J. p. 655 n. 43.

Hartman v. Speck.

The opinion of the court was delivered by

DAWSON, J.:   This was an action to recover a share of certain real-estate dealers' commissions alleged to have been earned by plaintiffs in the service of defendant.

It appears that in 1920 the defendant, J. J. Speck, had certain tracts of land for sale in the Rio Grande valley in Texas.   The plaintiffs, L. A. Hartman and Homer B. Jenkins, were a partnership firm of real-estate dealers in Topeka.   Through an agreement between Speck and Jenkins the services of plaintiffs were secured by Speck to assist him in finding buyers for his Texas lands.   Plaintiffs set about that undertaking and did produce certain prospective buyers who went to Texas, partly at their own expense and partly at the expense of Speck, to look over Speck's lands, and sales of some of these lands were thereby effected.

Eventually, after a few months' experience in this selling campaign, Hartman decided to sever his partnership connection with Jenkins and advised Speck to that effect and requested or notified him not to pay Jenkins Hartman's share of the commissions earned by the partners.   Speck expressed his assent to this request or demand of Hartman.

Some months later, no share of commissions being forthcoming to Hartman, he commenced this action, alleging the engagement of the partners to sell defendant's Texas lands at an agreed commission of 15 per cent of the sales price less certain expenses borne by Speck; and that plaintiffs had effected sales, viz.:

| | | | |
|---|---|---|---|
| To Beecher Hawk | 50 acres at $325.00 per acre | $16,500.00 |
| To O. Neil | 20 acres at $325.00 per acre | 6,500.00 |
| To O. McCaffery | 20 acres at $350.00 per acre | 7,000.00 |
| To J. Kennedy | 80 acres at $337.50 per acre | 27,000.00 |
| To T. F. Rickenbacker | 80 acres at $500.00 per acre | 40,000.00 |
| Total sales | | $96,750.00 |

Plaintiffs alleged that defendant's expenses incurred in effecting such sales were $4,678.32, after the deduction of which from the sales price plaintiffs were entitled to 15 per cent of the net remainder, to wit, $9,834.18, and that the plaintiff Hartman was entitled to one-half of that amount, $4,917.09, for which sum with interest plaintiff Hartman prayed judgment.

Defendant's answer contained a general denial, and alleged that

the commissions which he was to pay were agreed to by defendant and Jenkins, and that such commissions were not to be due and payable until half the purchase price of the lands sold by plaintiffs should be paid in cash by the purchasers. The answer also alleged that the contract of employment provided that when lands, notes, mortgages and the like had to be accepted as part payment of the purchase price of Speck's lands, the plaintiffs had to stand a discount of $33\frac{1}{3}$ per cent of all losses sustained in turning into cash the property thus accepted. Other conditions of the employment of plaintiffs as Speck's agents were also pleaded.

Defendant's answer further alleged that to effect the sale to Hawk as pleaded in plaintiffs' petition, he necessarily incurred an expense of $1,500 in clearing the land of brush, and that he had to abate the price because 13 acres of the tract were nonirrigable, and that the total refund defendant had to make to Hawk was $10,490.

Touching the other sales alleged to have been effected by plaintiffs, defendant pleaded that the sale to Neil was canceled; the sale to McCaffrey had to be scaled down to 10 acres; that the cost of clearing the land sold to Kennedy was $3,000; that the price had to be abated $1,500 because part of the land was nonirrigable; and that Kennedy had sued defendant for damages incidental to the sale which cost defendant $2,700; and that he had received a nominal $16,000 mortgage on Nemaha county land as part payment of the price of the land sold to Kennedy, but that this mortgage was worth no more than $12,000. Touching the sale to Rickenbacker, there had been a special agreement that the agents' commission was to be 10 per cent, and that Rickenbacker only bought $25,000 worth of land, not $40,000 worth as alleged by plaintiffs, and that defendant had received as part payment certain Shawnee county land at a nominal value of $10,000, but the actual value of which was $4,000.

Defendant further answered that the gross commissions on the sales alleged amounted to $7,568.50, and by reason of abatements, losses and necessary discounts to realize cash on lands received as part payments and miscellaneous items of expense and payments to Jenkins, aggregating $8,513.32, that plaintiffs were indebted to defendant in the sum of $944.82. Defendant further alleged that after he was notified by plaintiff not to pay his share of the earned commissions to Jenkins, the latter continued to work for defendant

and that Jenkins had gotten into debt to defendant in the sum of $2,637.98. Wherefore defendant prayed that if the Hartman-Jenkins partnership was dissolved he should have judgment against Hartman for $944.82, and if it had not been dissolved that he be given judgment against both plaintiffs in the sum of $3,672.80.

Plaintiffs' reply was a general denial. The case was tried by the court without a jury. Judgment was entered for plaintiff Hartman for $4,460.55.

Defendant appeals, contending principally that the judgment was contrary to the evidence. This contention is too broad. It was certainly not contrary to *all* the evidence. Indeed, the defendant in his pleading and also in his testimony contributed materially to the establishment of plaintiffs' cause of action, particularly in the important admission that Hartman had notified him about May 20, 1920, not to pay Hartman's half of the commissions to Jenkins. Other important facts supplied by defendant were that certain sales were effected by plaintiffs and that certain commissions were earned thereby; but so far as the offsets and deductions claimed by defendant, and which totally extinguished those commissions and left plaintiffs in debt to defendant, the trial court was not bound to adopt defendant's contentions either as true in fact or as sound in law. Defendant's testimony that plaintiffs' commissions were not to be due until Speck should receive half the purchase price of the lands sold concerned a matter so unusual that the court might readily have discredited it. Moreover, a witness for plaintiff testified that Speck and Jenkins told him the commissions were due "as soon as the deals were closed." Speck's cancellation of the sale to Neil was no concern of plaintiffs. Their commission was earned "when the deal was made." Nothing that happened thereafter between Neil and Speck had any effect upon that commission. So, too, the modification of the original contract of sale to McCaffrey did not reduce or modify defendant's liability to pay plaintiffs the agreed rate of commission based upon the sale price as originally fixed. And the fact that defendant was subjected to a lawsuit by Kennedy for damages which cost defendant $2,700 was no offset to plaintiffs' demands unless it were shown that some delinquency of plaintiffs provoked the lawsuit which subjected defendant to that expense. Speck had the privilege of rejecting any sales effected by plaintiffs if he were not satisfied with the financial responsibility

of the purchasers produced by plaintiffs, but in each case he expressly approved the sales made by them.

There was shown in evidence an elaborate statement of account by defendant to plaintiff Hartman, covering the sales to Hawk, Neil, McCaffery, Kennedy and Rickenbacker, and the proceeds of cash, notes, lands, etc., received by defendant therefor, which statement also listed and itemized defendant's expenses which had to be deducted from the gross proceeds before plaintiffs' 15 per cent commission should be computed. The manifest purpose of this statement was to apprise plaintiffs of the status of the accounts between them, and that they would know what was coming to them as net commissions earned. This comprehensive statement gave no hint that it was incomplete; and in it no claim was made of discounts on account of notes or property received in lieu of cash, nor for any abatements on account of reductions in the acreages sold, nor for abatements in purchase price on account of nonirrigable lands included in the tracts sold by plaintiffs. While this elaborate statement prepared by defendant for the information of plaintiffs may not have had all the technical attributes of an account stated, so as to conclude the rights of the defendant, it was of potent evidential significance in considering the merit of some of the offsets claimed by him against plaintiff Hartman's share of the earned commissions.

This court can discern nothing which would justify or permit the judgment to be disturbed.

It is therefore affirmed.