No. 27,977.

JOHN COLLOPY, *Appellee*, v. GEORGE STEVENSON, *Appellant*.

(265 Pac. 1098.)

SYLLABUS BY THE COURT.

1. BROKERS—*Right to Commission — Procurement of Buyer Making Enforceable Contract.* Rule followed that a real-estate broker's commission on the sale of a farm is due when he has produced a buyer with whom the owner makes a written and enforceable contract of sale; and the broker's right to his commission cannot be defeated because the contract is not enforced by either of the principals concerned therewith.

2. SAME—*Right to Commission—Forfeiture of Earnest Money.* Where a written contract for the sale of a farm provides that the buyer shall deposit a part of the purchase price to be forfeited to the seller if the buyer fails to pay the balance of the purchase price, the broker's right to his commission cannot be defeated because of the purchaser's default where the seller forfeits and appropriates to his own use the purchaser's deposit as the contract provided.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed April 7, 1928. Affirmed.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellant.

*A. C. Malloy, Roy C. Davis* and *Warren H. White,* all of Hutchinson, for the appellee.

Brokers, 9 C. J. p. 608 n. 94; 44 L. R. A. 616; 4 R. C. L. 307 *et seq.*

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover a real-estate dealer's commission of $200. Judgment on the pleadings and on defendant's opening statement was entered in plaintiff's behalf, and defendant appeals.

The defendant, George T. Stevenson, of Turon, Kan., owned a farm near Cayuga, N. Y., which he desired to sell, and to that end he employed the plaintiff, John Collopy, a Reno county real-estate dealer, to find a buyer. Collopy got in touch with one Eber T. McDonald, of Cayuga, N. Y., and induced McDonald and Stevenson to enter into a written contract for the sale of the farm at an agreed price of $7,500, of which sum $4,800 was to be paid by assuming a mortgage on the farm and the balance of $2,700 was to be paid in cash when the title was accepted. The contract contained the usual provision that the seller was to furnish an abstract showing good, clear and unencumbered record title except the specified mortgage, and the abstract was to be timely submitted to the buyer for examination. The contract further provided:

". . . Said party of the second part [McDonald] hereby agrees to and does hereby deposit with the State Bank of Turon, Turon, Kan., in the sum of $500 as a forfeit in case the second party fails to pay the balance of said consideration.

"It is further agreed that first party is to pay a commission on this sale of $400 as follows: John Collopy, Turon, Kan., $200, and Eber T. McDonald of Cayuga, N. Y., $200. Commission to be paid when deal is closed.

. . . . . . . . . . . . . .

"GEO. T. STEVENSON. (Seal.)
"EBER T. McDONALD. (Seal.)"

Defendant's answer admitted he signed the contract, but alleged that McDonald was merely a coagent of plaintiff; that McDonald was negotiating to sell the land to the tenant on the farm, one Decker, of Cayuga, N. Y.; that Decker never signed the contract; that McDonald was a man of small means and unable to pay the $2,700 cash; that Decker was unable financially to purchase the property; and that plaintiff never did produce a purchaser ready, able and willing to buy the farm.

Defendant's opening statement repeated and amplified the facts admitted and alleged in his answer—that Decker raised the $500 which McDonald deposited in the Turon bank in accordance with the written contract and made arrangements to borrow the balance

of the $2,700, but about that time the fact theretofore undisclosed by Stevenson came to light, that the first mortgage of $4,800 was already past due and in default, in consequence of which the money loaner who was to furnish the required balance of cash refused to loan it; and the holder of the mortgage also insisted, "That mortgage is due, and I want my money." Because of this state of affairs Decker did not buy the farm; and following the failure of McDonald to pay the balance of the purchase price Stevenson forfeited the $500 in the Turon bank to his own use.

At the conclusion of defendant's opening statement a short colloquy of court and counsel occurred:

[THE COURT]: "Well, you got the $500 and you got a written contract.

[COUNSEL FOR DEFENDANT]: "No, sir; I don't want your honor to make that statement before the jury.

[THE COURT]: "You got $500 and made a written contract.

[COUNSEL FOR DEFENDANT]: "No, sir; not with any purchaser."

In disposing of the case, the pleadings and defendant's opening statement, the court rendered a memorandum opinion, viz.:

[THE COURT]: "I am irresistibly impressed in my mind with the fact that the plaintiff is entitled to recover in this case. There is no question but that the contract involved is a valid and enforceable contract, especially as there was no agreement or pretended claim of any agreement to the contrary. In fact, it was partially executed in the extent at least of part payment of $500, which was accepted by the defendant and retained. When the defendant accepted this $500 and retained the same, he verified the contract in every respect, confirmed its regularity and binding force, and as long as he retained the $500 he is estopped from claiming that it was and is no contract. You can't disaffirm and keep the fruits of a contract.

"Therefore, with this idea, judgment will be rendered for the plaintiff for the $200."

Defendant appeals, invoking the general rule that before earning his commission a real-estate dealer must find a purchaser ready, able and willing to buy at a price and on terms agreeable to the owner. He contends that neither McDonald, the nominal party to the contract, nor Decker, the undisclosed purchaser for whom McDonald was acting, qualified as a purchaser under the foregoing rule. The fact that defendant had no direct dealings with Decker and may not have known of him was immaterial. (*Land Co. v. Eddy*, 111 Kan. 766, 208 Pac. 611.) When defendant joined in a written and enforceable contract with McDonald for the sale of the property he accepted the latter as a qualified purchaser.

45—125 KAN.

In *Leinback v. Dyatt,* 112 Kan. 782, 212 Pac. 894, it was said:

"Questions are raised as to the financial ability of some of the buyers, including the plaintiff. Where the seller accepts a buyer produced by his agent, so far as to enter into a contract of sale with him, his liability for the commission is no longer affected by the question of the buyer's ability to pay." (p. 785.)

In *Lorts v. Herbert,* 113 Kan. 113, 115, 213 Pac. 811, it was said:

"But here there was an outright sale of the lease for $24,000—$5,000 in cash and the balance in ninety days. That the parties stipulated as to the consequences which would flow from Alderman's default of final payment, or from defendant's failure to- furnish satisfactory abstract, detracted not at all from the consummation of the contract of sale. When that contract was made, plaintiff's commission was earned. The terms of payment agreed to by buyer and seller, and the question whether those terms were subsequently complied with or breached, and the consequences of any breach, were matters which did not affect the rights of plaintiff."

Our reports are full of decisions to the same effect. (*Lyman v. Wagner,* 90 Kan. 12, 132 Pac. 988; *Hutton v. Stewart,* 90 Kan. 602, 135 Pac. 681; *Avery v. Howell,* 91 Kan. 297, 137 Pac. 785; *Triplett v. Feasel,* 105 Kan. 179, 182 Pac. 551; *Hartman v. Speck,* 123 Kan. 436, 256 Pac. 137.)

Defendant emphasizes the concluding language of the contract, "Commission to be paid when deal is closed." He argues that the deal was never closed, and cites *Gould v. Stewart,* 111 Kan. 41, 206 Pac. 309, to support his contention. In that case no commission was to be paid unless the exchange of farms was consummated. The exchange was never made; the contract itself was apparently unenforceable since one of the parties thereto failed in a suit for specific performance; and the real-estate broker's own version of his employment was that his commission was dependent on "whether the deal stood up and the trade went through." "Otherwise," he said, "you know, I don't get anything."

In the case under review the contract was not only enforceable but was enforced according to its alternative terms—forfeiture of McDonald's $500 if he failed to pay the balance of the purchase price, which was one of the expressly stipulated ways in which the deal could be closed.

The judgment is affirmed.