No. 49,893

WILLIAM R. HARRIN *et al., Appellees,* v. BROWN REALTY COMPANY, INC., *Appellant.*

(602 P.2d 79)

Opinion filed October 27, 1979.

*Thomas V. Murray,* of Barber, Emerson, Six, Springer & Zinn, of Lawrence, argued the cause and was on the brief for the appellant.

*Rod L. Richardson,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an action between plaintiff sellers and defendant real estate company to determine whether the real estate company is entitled to a partial commission on a real estate transaction in which the purchaser defaulted between the time of the execution of the contract and the time of closing specified in the contract. The trial court held in favor of the plaintiff sellers and defendant real estate company appeals.

The trial court's findings of fact are not challenged on appeal, and all are supported either by substantial competent evidence or the stipulations of the parties. They are, accordingly, conclusive on appeal and are set forth fully herein in lieu of a factual summary.

"Findings of fact

"1. On, or about August 25, 1974, the plaintiff entered into an oral contract with Max Good, representing defendant corporation, whereby plaintiff agreed to pay to defendant a real estate commission of $10,000.00 when defendant would produce a ready, willing and financially able buyer for plaintiff's 240 acre farm located in Douglas County, Kansas.

"2. Plaintiff is a medical doctor with residence and medical practice in Johnson County, Kansas. Plaintiff is experienced in buying and selling real estate and has used the defendant agency on a prior occasion in a real estate transaction.

"3. In October, 1974, Mr. Good introduced to plaintiff a proposed buyer named Kenneth Eugene Newell, Jr. Negotiations began during which plaintiff informed Mr. Good that plaintiff had to obtain $250,000.00 for the farm over and above defendant's commission. On November 1, 1974, through the efforts of Mr. Good, plaintiff and Newell entered a written contract for sale of the farm for the price of $267,900.00.

"4. The contract terms required an earnest money payment of $15,000.00 upon signing the contract with the sum being held by defendant as earnest money escrow until closing. On January 1, 1975, if title was approved, Newell was to pay an additional sum of $17,900.00 and plaintiff would execute and deposit in escrow a warranty deed. The contract provided that Newell was to receive possession of the pasture land upon signing the contract and full possession on closing.

"5. The contract balance was to be paid: $47,000.00 on November 1, 1976, and thereafter annual installments of $6250.00 with interest at 8% per annum.

"6. At the time this contract was entered into, plaintiff was negotiating to purchase another farm and needed $25,000.00 to close that deal. He asked Mr. Good to disburse to him the $15,000.00 earnest money on the day that he and Newell entered into the contract. Good was reluctant to make the early disbursement, but agreed to do so if defendant could retain $3,000.00 to assure that sum would be available on date of closing to apply toward defendant's commission.

"7. Although plaintiff wanted the entire $15,000.00 disbursed to him, he agreed that defendant could retain $3,000.00 to apply toward the commission. Plaintiff and Good then agreed that the $10,000.00 commission would be paid: $3,000.00 upon disbursement of the earnest money, $4,000.00 on January 1, 1975, and $3,000.00 on November 1, 1976.

"8. On November 7, 1974, Mr. Good disbursed $12,000.00 from defendant's earnest money account to the plaintiff, and on November 8, 1974, $3,000.00 to defendant.

"9. At some time, the date is not clear from the evidence, Mr. Good notified Newell of the disbursement and no objection was made. In fact, through negotiations between Newell and plaintiff, plaintiff granted Newell early possession of the house located on the real estate.

"10. Newell failed to make the payment of $17,900.00 due on January 1, 1975,

and continued to occupy the house and pasture land. After January 1, 1975, plaintiff offered Newell $3,100.00 if he would vacate the property by March 15, 1975, which Newell failed to do and plaintiff sometime later obtained possession.

"11. At the time the contract was entered into between the plaintiff and Newell, the plaintiff and Mr. Good assumed that the sale would go through, principally upon the fact that Newell had paid in a substantial earnest money payment.

"12. Newell was not financially able or ready to perform the contract according to its terms.

"13. Plaintiff demanded that defendant return the $3,000.00 in mid March, 1975."

The action herein was commenced by the sellers to recover the $3,000.00 in dispute.

The trial court's conclusions of law are as follows:

"1. The defendant did not produce a financially able buyer for plaintiff's real estate as it had agreed to do in August, 1974, and unless there was an estoppel or subsequent agreement with the plaintiff, the defendant is not entitled to a commission. *Winkelman vs. Allen,* 214 Kan. 22, 519 P.2d 1377.

"2. The evidence does not substantiate a finding that a subsequent agreement was made by the plaintiff and defendant, supported by consideration, that defendant was to obtain a $3,000.00 commission. The defendant, although expending time and expense in putting together this contract, had not performed differently than it had originally agreed to do. The act on the part of defendant, through its agent, in making distribution of the $12,000.00 to plaintiff prior to the time it was due, is not valid consideration that would support an agreement in the legal sense. The funds in escrow, held by defendant, did not belong to the plaintiff or to the defendant and public policy and defendant's obligation to both buyer and seller required defendant to maintain those funds in accordance with the terms of the written contract.

"3. Counsel has not cited any authority that recognizes a concept of 'partial closing' in cases involving broker's commissions and the Court's limited research reveals none. Such concept would fall within the area of contracts, which the Court has decided adversely to defendant in paragraph #2 above, or in the equitable field of estoppel.

"4. The evidence does not support defendant's affirmative defenses of accord and satisfaction, waiver or estoppel. There was no implied consent shown on plaintiff's part that would infer that plaintiff acquiesced in defendant's retaining any part of the commission from the earnest money if the contract was not consummated because of the purchaser's fault. Mr. Good's testimony supports this conclusion as he testified that defendant was entitled to the commission because defendant had, through Mr. Good, earned it for work performed, time spent, abstracting, and a partial closing.

"5. Plaintiff is granted judgment against defendant for $3,000.00 and costs."

To avoid confusion, all references herein to the parties, the purchaser, and the broker will be by the same designations used by the trial court; that is, plaintiff, defendant, Newell, and Good, respectively. For clarification, Good is the broker and is also

president of defendant corporation. The parties treat Good and defendant as one and the same as far as the issues herein are concerned, and we will take that position also.

The defendant, as previously stated, does not challenge the findings of fact of the trial court. It does, however, challenge the trial court's application of the law to those facts. Defendant contends the trial court erred in failing to conclude:

1. That *Winkelman v. Allen,* 214 Kan. 22, 519 P.2d 1377 (1974), was not controlling, under the facts of this case;

2. That acts of plaintiff, after the execution of the contract, but prior to the contractual date of closing, legally constituted a partial closing or a partial early consummation of the transaction; and

3. That acts of plaintiff after execution of the contract estopped him from seeking return of the $3,000.00.

Defendant's three claims of error are so interrelated that it is impossible to separate them in this opinion. In support of each of these contentions, defendant relies on the following facts:

1. Plaintiff's request to Good for disbursement of the purchaser's $15,000.00 which was being held in escrow;

2. The receipt by plaintiff of $12,000.00 of such funds;

3. Plaintiff's permitting $3,000.00 of said funds to remain in defendant's possession;

4. Plaintiff's allowance to Newell of full possession of the premises rather than the partial possession authorized by the contract; and

5. The failure of plaintiff to make demand for return of the $3,000.00 for more than four months after the $12,000.00 disbursement of the funds to plaintiff.

In *Winkelman,* this court held:

"The general rule is that a real estate agent or broker is entitled to a commission if (*a*) he produces a buyer who is able, ready and willing to purchase upon the proffered terms or upon terms acceptable to the principal; (*b*) he is the efficient and procuring cause of a consummated deal. The latter is subject to a qualification where failure in completion of the contract, or closing title, results from the wrongful act or interference of the principal."

"In order for a real estate broker to recover a commission under the rule stated in the foregoing syllabus, the burden is upon the broker to prove that he obtained a customer who was able, ready and willing to meet the terms offered by the owner."

"Where a real estate broker does not produce an able, ready and willing buyer upon terms acceptable to the owner, the real estate agent is not entitled to a commission." Syl. ¶¶ 1, 2, 3.

Defendant stipulated that Newell was financially unable to perform the contract (on the date of closing specified in the contract). There is no contention that Newell's failure to complete the contract was the result of the wrongful act or interference by plaintiff. The trial court concluded that, under the holding in *Winkelman,* defendant was not entitled to a commission. Defendant does not challenge *Winkelman,* but contends plaintiff's acts, above listed, make the holding in *Winkelman* inapplicable to this case.

In essence, defendant is asserting that plaintiff is estopped by his conduct from relying on the law as set forth in *Winkelman.* In the alternative, defendant contends this same conduct resulted in a partial consummation of the contract or a partial closing and, accordingly, a partial commission was earned.

Before proceeding further, let us look at K.S.A. 58-3022 (in the form in effect at times material hereto), which provided:

"(a) *Trust accounts.* Every broker shall, at all times, maintain in his or her name or firm name, a separate trust account designated as such in an insured bank or savings and loan association in which the broker shall deposit all funds not the broker's own coming into his or her possession, including funds in which the broker may have some future interest or claim and including, but not limited to, earnest money deposits. No broker shall commingle his or her personal funds or other funds in said trust account with the exception that a broker may deposit and keep a sum not to exceed one hundred dollars ($100) in said account from his or her personal funds which sum shall be specifically identified and deposited to cover service charges related to said trust account.  .  .  .

.  .  .  .

"(b) *Closing statements.* Every broker shall deliver to the seller in every real estate transaction wherein he or she acts as a real estate broker, at the time such transaction is consummated, a complete detailed closing statement showing all of the receipts and disbursements handled by such brokers; also to deliver to the buyer a complete statement showing all monies received in the transaction from such buyer and how and for what the same were disbursed; the broker shall retain true copies of such statements in the broker's files for at least five (5) years."

Section (a) of said statute requires that funds not belonging to the broker be maintained in a separate trust account. The $15,000.00 was being held in escrow by the broker. The money belonged to the purchaser. Defendant is claiming estoppel against plaintiff because defendant and seller divvied up the purchaser's earnest money which was to be held in escrow until the contractual closing. The trial court found that the retained $3,000.00 was to be held to apply toward the commission.

Section (*b*) requires the broker to deliver a detailed closing statement to the seller and a statement to the buyer at the time of the consummation of the transaction. Defendant claims plaintiff's acts constituted a partial closing of the transaction, but no allegation is made that any "partial" closing statements were prepared or delivered.

Defendant cites no authority for his concept of "partial closing," but contends that *Winkelman* created the need for the rule. Defendant states that prior to *Winkelman* it would have been entitled to the full commission because a contract had been signed. See *Collopy v. Stevenson*, 125 Kan. 703, 265 Pac. 1098 (1928). This court in *Winkelman*, 214 Kan. at 38, quotes *Ellsworth Dobbs, Inc. v. Johnson*, 50 N.J. 528, 548-549, 236 A.2d 843, 30 A.L.R.3d 1370 (1967):

" 'In a practical world, the true test of a willing buyer is not met when he signs an agreement to purchase; it is demonstrated at the time of closing of title, and if he unjustifiably refuses or is unable financially to perform *then*, the broker has not produced a willing buyer.' "

We recognize no theory of "partial closing." If defendant had shown that plaintiff and defendant subsequently entered into a valid contract which altered the terms of the original contract as to closing and commission, then defendant's right to a commission would be under the *new* contractual agreement. The "partial closing" theory, accordingly, is not a separate legal concept.

Defendant argues the delivery of full possession of the real estate prior to contractual date of closing created equitable rights of ownership in the purchaser. The purchaser is not a party to this action. Whatever legal rights which may have accrued to the purchaser, as to either party hereto, by the acts of the parties, are not issues in this action. The uncontroverted evidence is to the effect that delivery of full possession of the real estate in advance of closing was done at the request of Newell and was acceded to by plaintiff as an accommodation to Newell. The record is devoid of any evidence that plaintiff, defendant, Good, or Newell intended that this early full possession would operate to alter any rights or obligations among the group.

This is not the place for a definitive discussion of equitable estoppel. Basically, however, the application of the doctrine involves an assertion of rights inconsistent with past conduct,

silence by those who ought to speak, or situations wherein it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced. See *Bowen, Administrator v. Lewis,* 198 Kan. 706, 712-713, 426 P.2d 244 (1967); and *Schiffelbein v. Sisters of Charity of Leavenworth,* 190 Kan. 278, 281-282, 374 P.2d 42 (1962), for a full discussion of the doctrine of equitable estoppel or quasi-estoppel.

Defendant engaged in highly questionable conduct by agreeing to disburse the escrow funds without prior authorization by the purchaser who was the owner of the funds. After the agreement to disburse had been made, defendant notified the purchaser of same, but only because a stop-payment order had been issued on purchaser's $15,000.00 check. Defendant called the purchaser and said:

" . . . 'Ken [Newell], I have made an agreement with Dr. Harrin. He is to receive $12,000.00 of this money. He is going to let us retain $3,000.00 of it. We have got to get this check cleared, because he will be down this week to get his money.' "

After receipt of the call, Newell made the check good. In essence, defendant directed Newell to make the check good, so defendant could live up to its prior agreement with plaintiff.

Defendant has not shown that the court erred in failing to apply the doctrine of equitable estoppel.

The question of when and how a real estate agent or broker becomes entitled to a commission depends upon his contract. Parties may by contract condition the payment of a broker's commission upon prescribed events or contingencies and for division of the earnest money in case of forfeiture because of the default of the purchaser. *McIntosh v. Frisinger,* 507 S.W.2d 419 (Mo. App. 1974).

Defendant's attorney drew the original contract which was silent as to commission, although provisions could easily have been inserted therein delineating commission to be paid upon failure to consummate the contract. If defendant believed, subsequent to the execution of the contract between plaintiff and Newell, that the broker and plaintiff had agreed to a partial commission being earned prior to the contractual closing date, a contract to such effect could have been prepared and signed by the affected parties.

The trial court found the parties to this action assumed the

"sale would go through," and therein lies the basic cause of the parties' problems. There was no agreement or discussion between the parties as to a "Plan B" relative to a commission if the sale did not go through. The burden is on defendant to show its right to a commission. See *Winkelman v. Allen,* 214 Kan. 22.

We conclude the trial court did not err in (1) its application of *Winkelman* to the facts herein; (2) failing to invoke the doctrine of equitable estoppel; and (3) failing to conclude that the transaction had been partially consummated or partially closed.

No error having been shown, the judgment is affirmed.

FROMME, J., not participating.