NOT DESIGNATED FOR PUBLICATION

No. 119,425

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAWN C. WATERMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed August 16, 2019. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: The district court initially imposed on Shawn C. Waterman a sentence that included 24 months of postrelease supervision. Because the law at the time of Waterman's crime required the imposition of lifetime postrelease supervision, the State moved to correct Waterman's illegal sentence. The district court agreed and sentenced Waterman to lifetime postrelease supervision. Waterman did not appeal within the time allowed. Later, he moved under *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), for leave to file a late appeal, claiming that he was ill advised by his counsel not to pursue a timely appeal. The district court denied Waterman's motion, and this appeal followed. Based on our review, we conclude that the district court correctly denied Waterman's

1

motion. His lawyer properly advised him regarding his prospects on appeal, and so Waterman has failed to establish an exception under *Ortiz* that would excuse an untimely appeal.

*Procedural History*

The State charged Waterman with rape. The crime was alleged to have occurred on either July 1 or July 2, 2006. His trial resulted in a hung jury, and the court scheduled a retrial. In the meantime, Waterman entered into a plea agreement with the State in which he agreed to plead no contest to a reduced charge of aggravated sexual battery. The district court accepted his plea and sentenced him to 57 months in prison followed by 24 months of postrelease supervision.

Several months later, Waterman moved to appeal out of time and to withdraw his plea. At the hearing that followed, Waterman abandoned his motions and asked that they be dismissed.

Two years later the State moved to correct Waterman's sentence from 24 months of postrelease supervision to lifetime supervision, arguing that Waterman's original sentence was illegal because when his crime was committed the Legislature had recently changed the period of postrelease supervision in K.S.A. 2006 Supp. 22-3717(d)(1)(G) from 24 months to lifetime.

At the hearing that followed, Waterman's counsel did not oppose the State's motion, and the court corrected Waterman's sentence accordingly.

Eleven months later, Waterman moved under *Ortiz* for leave to appeal out of time the district court's order correcting his sentence. He claimed that his counsel did not

2

properly explain to him that he could appeal the district court's order. The district court appointed new counsel and set the matter for an evidentiary hearing.

At the hearing, Waterman testified that he did not appeal the change in his sentence because his counsel told him there were no grounds for an appeal. He contended that but for his counsel's advice he would have appealed the decision to resentence him to lifetime postrelease supervision.

Waterman's counsel testified that before meeting with Waterman to discuss the merits of the State's motion, he researched K.S.A. 22-3717(d)(1)(G) and discussed it with another attorney and concluded the State's motion was correct—Waterman was subject to lifetime postrelease supervision. Counsel spoke with Waterman twice over the phone and once in the hallway before the sentence modification hearing. He told Waterman about the hearing's procedure, that the court would rule on the motion, and that Waterman would be resentenced but he had the right to appeal. Waterman asked him, "'Well, do you think we have a chance of winning it?'" Counsel told Waterman that they did not. He said that Waterman could contest a modification of his sentence if he chose to do so, but it was likely that the court would grant the State's motion. Waterman told his counsel that he did not want to contest the State's motion and, accordingly, his counsel raised no objections and made no arguments against the State's motion at the hearing that followed.

After the sentence modification hearing, Waterman asked his counsel, "'Well, what about taking an appeal?'" Counsel advised Waterman an appeal would be fruitless, but it was Waterman's decision whether to pursue an appeal. He told Waterman an appellate defender would represent him if he chose to appeal the district court's decision. Counsel testified that he told Waterman "you want to take an appeal, that's fine, you know, that's your decision to make. You just need to understand that I don't believe it's going to go anywhere." Afterwards, Waterman told counsel that he did not want to file an appeal.

3

The district court found Waterman did not meet any of the *Ortiz* exceptions and that his counsel's testimony was credible. Waterman appeals.

*Analysis*

Waterman failed to timely appeal the district court's modification of his sentence, which ordinarily would be fatal to being afforded any relief. But *Ortiz* provides for an otherwise untimely appeal if Waterman (1) was not informed of his right to appeal, (2) was not furnished an attorney to perfect an appeal, or (3) was furnished an attorney for that purpose who failed to perfect and complete an appeal. See *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016).

Waterman argues that the third *Ortiz* exception applies because his counsel failed to properly advise him about his rights to appeal. Our task on appeal is to review the district court's factual findings at the *Ortiz* hearing to determine if they are supported by substantial competent evidence. We review de novo the legal determination that Waterman failed to establish that he is entitled to relief under the third *Ortiz* exception. See *Smith*, 304 Kan. at 919. The district court found Waterman's counsel to be credible. In the course of our review we do not reweigh the evidence, reassess the credibility of the two witnesses at the hearing, or resolve any conflicts in evidence. See *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

Waterman argues on appeal that but for his counsel's inadequate advice he would have appealed, and on appeal he would have argued that he was entitled to relief on two legal theories. First, he claims he could have argued on appeal that the doctrines of equitable or quasi-estoppel would have applied because of his detrimental reliance on a term of 24 months' postrelease supervision when he agreed to enter his plea. Second, he

4

claims he could have argued on appeal that lifetime postrelease supervision is unconstitutional because it constitutes cruel and unusual punishment.

*The Cases*

A review of the relevant cases is appropriate here. In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), the Supreme Court declared that counsel must consult with the defendant about an appeal. "We employ the term 'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." 528 U.S. at 478.

The Kansas Supreme Court applied *Flores-Ortega* in *State v. Patton*, 287 Kan. 200, 224, 195 P.3d 753 (2008). There, the defendant pled to drug crimes involving the possession of methamphetamine and anhydrous ammonia. There was no direct appeal. Then, in 2004, our Supreme Court handed down its decision in *State v. McAdam*, 277 Kan. 136, 146-47, 83 P.3d 161 (2004), in which the court held that the manufacture of a controlled substance should be treated as a level 3 rather than a level 1 felony. Patton sought to pursue a late direct appeal under *Ortiz*, arguing that he told his counsel to appeal but his counsel failed to do so. The district court granted a late appeal under *Ortiz*. On its review of that order, a panel of the Court of Appeals refused to order resentencing under *McAdam* because Patton waived his right to a direct appeal as part of his plea agreement. On review by our Supreme Court, the court found that the third *Ortiz* exception applied because Patton told his counsel to appeal but counsel failed to do so. The court stated that had Patton's lawyer followed Patton's instructions, he would have been entitled to resentencing under *McAdam*. But the court noted that a defendant "need not show . . . that such a timely direct appeal would have been successful." *Patton*, 287 Kan. at 225.

5

Four years later, our Supreme Court handed down its opinion in *State v. Snellings*, 294 Kan. 149, 273 P.3d 739 (2012). In *Snellings*, the court held that possession of ephedrine or pseudoephedrine with intent to manufacture a controlled substance, a level 2 felony, has the same elements as possession of paraphernalia with intent to manufacture a controlled substance, a level 4 felony. 294 Kan. at 158-59. Accordingly, the crime of possession of ephedrine or pseudoephedrine with intent to manufacture a controlled substance must be treated for sentencing purposes as a level 4 rather than a level 2 felony.

Two years later, in *Grazier v. State*, No. 109,792, 2014 WL 5312851 (Kan. App. 2014) (unpublished opinion), the defendant pled to possession of drug precursors, a level 2 felony. Our Supreme Court had granted a petition for review in *Snellings* 10 months before Grazier was sentenced. Grazier's counsel told him there was no appealable issue, and Grazier did not appeal his sentence. On review, this court declared that Grazier's counsel should have informed him of the "identical offense" sentencing doctrine. Grazier was granted a late appeal based on the finding that had Grazier filed a direct appeal, his appeal would have been pending when *Snellings* was decided and Grazier would have been entitled to relief under *Snellings*—his conviction would have been reduced from a level 2 to a level 4 felony. *Grazier*, 2014 WL 5312851, at *3-4.

Two years later, our Supreme Court handed down opinions on the same day in *State v. Shelly*, 303 Kan. 1027, 371 P.3d 820 (2016), and *State v. Perry*, 303 Kan. 1053, 370 P.3d 754 (2016). Shelly and Perry were husband and wife and both were charged with drug crimes. Shelly pled to possession and distribution of drug precursors, level 2 felonies, in March 2012. On April 6, 2012, the day of Shelly's sentencing, our Supreme Court handed down its opinion in *Snellings* that required Shelly's crimes to be treated as level 4 rather than level 2 felonies. Shelly was sentenced to level 2 offenses. After sentencing, Shelly's counsel told him that there was nothing to appeal. During the month following Shelly's sentencing, and while he was incarcerated, Shelly learned about the holding in *Snellings* and had his mother ask his counsel about it. Counsel took no action

6

and told Shelly to "'stop being a jailhouse lawyer.'" *Shelly*, 303 Kan. at 1029. Shelly then filed a pro se K.S.A. 60-1507 motion based on the holding in *Snellings*, but the district court found that *Snellings* did not apply to his conviction for distribution of a drug precursor. Shelly filed a late direct appeal of his sentencing, and our court remanded for an *Ortiz* hearing. On remand, the district court denied a late direct appeal under *Ortiz*.

On review, our Supreme Court determined in *Shelly* that a defendant must have reasonably demonstrated to counsel that he or she was interested in appealing or that a rational defendant would want to appeal. If so, counsel was required to consult with the defendant. To do so successfully, counsel must advise the defendant of the advantages and disadvantages of taking an appeal and counsel must make reasonable efforts to discover the defendant's wishes. Counsel who properly consults the defendant will only fail to perform when counsel fails to follow the defendant's express instructions to file an appeal. A defendant who explicitly tells such counsel not to file an appeal cannot later complain that counsel acted deficiently. *Shelly*, 303 Kan. at 1041-42. Moreover, the defendant must show there was a reasonable probability he or she would have timely appealed but for the attorney's failure to consult. The court stated: "The minimal advice given—that there was nothing to appeal—unreasonably overlooked at least potentially meritorious grounds for appeal and did not allow [the defendant] to knowingly and intelligently waive his right to appeal. The consultation was thus inadequate." 303 Kan. at 1051.

In *Perry*, which involved Shelly's wife, both she and her husband were represented by the same counsel at their sentencings. Counsel was not aware of the holding in *Snellings* issued shortly after Perry's sentencing. Our Supreme Court determined that counsel had incorrectly advised Perry that there were no grounds for an appeal. If Perry had known of the *Snellings* opinion, she would have appealed. Her counsel's failure to learn of *Snellings* and advise Perry accordingly was objectively unreasonable and deprived Perry of her right to an appeal. *Perry*, 303 Kan. at 1061.

7

*Waterman's Claims*

Back to our present case, Waterman argues he is entitled to an out-of-time appeal because his counsel failed to advise him of the advantages and disadvantages of appealing. With regard to the disadvantages of an appeal, Waterman complains that his counsel never clarified that the only disadvantage to appealing was losing. This claim is refuted by the record. Waterman and his counsel discussed the merits of the State's motion both before and after the hearing. Before the hearing, Waterman asked if they had a chance at winning. Counsel correctly responded that they did not, but that Waterman could appeal if he wanted to. After the hearing, Waterman asked about an appeal. Counsel told him an appeal would be fruitless, but Waterman could appeal if he wanted to because it was his decision to make, and if he chose to appeal an appellate defender would be appointed to represent him on appeal. We find this advice was accurate and comprehensive and fully satisfied counsel's obligation to advise his client about the disadvantages of appealing. He did not discuss the advantages of an appeal because there were no potentially meritorious appellate issues to discuss.

But according to Waterman, we have overlooked the advantages of appealing on theories of equitable and quasi-estoppel and unconstitutional cruel and unusual punishment. We think not. We are convinced that these theories are nonstarters.

Before getting to those theories, we must consider Waterman's argument that his counsel overlooked telling him about the advantage of appealing in order to have another court review the case for any errors. That might be necessary for someone wholly unfamiliar with judicial proceedings in this country, but that would not include Waterman. It was Waterman who raised the question of pursuing an appeal. He clearly understood the concept that an appeal would permit a higher court to review his case. After all, that is what he sought earlier in this case when, several months after his original

sentencing, he moved for leave to pursue a direct appeal out of time. He obviously understood that he was asking for a chance to have another court review his case. We find Waterman's argument wholly unpersuasive.

With regard to Waterman's estoppel theories—equitable or quasi—it is clear to us that they lead nowhere. Waterman claims equitable estoppel applies because "in agreeing to plead no contest in accordance with the plea agreement, he reasonably relied to his detriment on the State's assertion, not to mention the district court's actual sentencing, that he would serve 24 months post-release supervision." As stated in *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 (1977),

> "Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts."

Waterman's theory of quasi-estoppel is based on *Harrin v. Brown Realty Co.*, 226 Kan. 453, 458-59, 602 P.2d 79 (1979), in which the court stated that quasi-estoppel "involves an assertion of rights inconsistent with past conduct, silence by those who ought to speak, or situations wherein it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced."

Waterman does not explain what "rights" are estopped from being asserted to his detriment. In view of the fact that estoppel applies to bar certain conduct of a party, is he now contending that in *State v. Waterman* one of the parties to this action was the district

9

court judge? Is he suggesting that the court should be estopped from correcting a previously imposed unlawful sentence?

Regardless of what sentence the State and Waterman agreed to recommend to the sentencing court, Waterman could not agree to an illegal sentence. See *State v. Jones*, 293 Kan. 757, 757-58, 268 P.3d 491 (2012). The same applies to a prosecutor. The State had no "right" to seek an illegal sentence. Moreover, the court was obligated to impose a sentence that was consistent with our Kansas sentencing statutes. These are not "rights" that the prosecutor or the court could choose to invoke or not. They are duties. The sentencing court did not have a "right" to impose on Waterman an illegal sentence. Likewise, when the sentencing error was uncovered, the court did not have a "right," which it could either choose to exercise or not, to correct the previously imposed illegal sentence. The court had the duty to follow the law and correct an illegal sentence previously imposed. Equitable estoppel clearly does not apply to this situation.

The same can be said for quasi-estoppel. Waterman now has a legal sentence which includes lifetime postrelease supervision. He would have us apply the doctrine of quasi-estoppel to change his sentence back to an illegal sentence. As stated in *State v. Alderson*, 299 Kan. 148, 151, 322 P.3d 364 (2014): "Equitable principles, such as quasi-estoppel, cannot be used to convert a legal criminal sentence into an illegal sentence."

We find no merit whatsoever in Waterman's estoppel theories.

Waterman also argues that his counsel should have explained to him the advantage of appealing so that he could have raised on appeal the argument that the imposition of lifetime postrelease supervision constituted unconstitutional cruel and unusual punishment.

10

For support Waterman relies on the holding by a panel of our court in *State v. Proctor* (*Proctor II*), No. 104,697, 2013 WL 6726286, at *4-8 (Kan. App. 2013) (unpublished opinion). Its predecessor, *State v. Proctor* (*Proctor I*), 47 Kan. App. 2d 889, 280 P.3d 839 (2012), *rev'd and remanded by S. Ct. order* June 19, 2013, was a direct appeal following the district court sentencing Proctor to lifetime postrelease supervision. *Proctor I* considered whether the imposition of lifetime postrelease supervision was unconstitutional as applied to the defendant. The *Proctor I* court found that under Proctor's particular circumstances, lifetime postrelease supervision violated both the Kansas and United States Constitutions. 47 Kan. App. 2d at 942.

Shortly thereafter our Supreme Court handed down opinions in *State v. Mossman*, 294 Kan. 901, 281 P.3d 153 (2012), and *State v. Cameron*, 294 Kan. 884, 281 P.3d 143 (2012), finding no categorical state or federal constitutional violations in imposing lifetime postrelease supervision. Our Supreme Court reviewed *Proctor I* and summarily remanded it to the Court of Appeals for reconsideration in light of the holdings in *Mossman* and *Cameron*. On further review, the panel deciding *Proctor I* issued *Proctor II* in which it again found that lifetime postrelease supervision was unconstitutional as applied to Proctor because of his personal history and circumstances.

Waterman does not argue that his counsel's inadequate advice deprived him of the chance to argue on appeal that lifetime postrelease supervision is *categorically* unconstitutional. That notion was dispelled in *Mossman* and *Cameron*. Waterman's claim is that he has been deprived of the opportunity to argue on appeal that lifetime postrelease supervision is unconstitutional as applied to him. Such an appellate argument would necessarily be predicated on a well-developed record before the district court on this claim, including all the facts from Waterman's personal history that would distinguish his circumstances from those of other criminal defendants who also face the prospects of lifetime postrelease supervision. But Waterman did not raise this argument below and never presented to the district court the facts necessary to support such a claim. Had

11

Waterman appealed this resentencing on this ground, he would have had no facts in the record to support his claim and it would have failed. As stated in *State v. Naputi*, 293 Kan. 55, 67-68, 260 P.3d 86 (2011):

> "We have repeatedly stated that the issue of cruel and/or unusual punishment will not be reviewed for the first time on appeal because it requires the district court's findings upon the three-part test established in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). [Citations omitted.] Granted, in *State v. Seward*, 289 Kan. 715, 720-21, 217 P.3d 443 (2009) . . ., we remanded to the district court to apply the *Freeman* factors. . . . However, we cautioned that such an outcome was an exceptional situation. . . . Central to that decision was the finding that the defendant had adequately raised the issue before the district court."

Unlike in *Seward*, Waterman did not raise his constitutional claim before the district court, so his case would not have been remanded for fact-finding on his claim that lifetime postrelease supervision was unconstitutional as applied to him. For these reasons, Waterman's counsel had no duty to advise him that it would be to Waterman's advantage to appeal his resentencing so he could raise this constitutional argument for the first time on appeal.

Waterman argues that this discussion of the merits of these possible appellate arguments is immaterial in deciding what advice counsel must give a defendant who is contemplating whether or not to pursue an appeal. We disagree. Waterman seems to hang his hat on language from *Patton* and ignore the language of *Shelly*.

In *Patton*, the court stated that a defendant "need not show . . . that such a timely direct appeal would have been successful." 287 Kan. at 225. But in *Shelly* the court stated: "The minimal advice given—that there was nothing to appeal—unreasonably overlooked *at least potentially meritorious grounds* for appeal and did not allow [the

12

defendant] to knowingly and intelligently waive his right to appeal." (Emphasis added.) 303 Kan. at 1051.

We understand the *Patton* court to have relieved a defendant from the heavy burden of having to prove absolutely that defendant's purported claims on appeal would carry the day. But this is not to say that any hare-brained theory a defendant can dream up will trigger counsel's duty to advise the defendant to appeal so as to bring that issue before the appellate court. We take from *Shelly* that counsel need only advise the defendant of *potentially meritorious* grounds for an appeal. Here, Waterman's counsel had no duty to advise him about the prospects of raising on appeal any constitutional or estoppel issues.

The cases discussed earlier support this. In each of those cases the defendant had a meritorious defense that could have been raised if counsel had given proper advice on the merits of an appeal. In *Patton*, had the defendant appealed he would have enjoyed the benefit of the court's holding in *McAdam* and had his conviction reduced from a level 1 felony to a level 3 felony. In *Grazier*, had the defendant been properly advised to appeal, his appeal would have been pending when *Snellings* was decided and he would have received the benefit of that decision—having his conviction reduced from a level 2 felony to a level 4 felony. Similarly, in both *Perry* and *Shelly*, the defendants would have obtained reduced sentences under *Snellings* had they been properly advised to appeal. The third *Ortiz* exception applied in these cases because counsel for the various defendants erroneously stated that they had no grounds for an appeal. We find no case in which the third *Ortiz* exception was found to apply when counsel failed to advise the defendant to appeal in order to raise a totally meritless issue.

In Waterman's case, his counsel correctly advised him on the futility of an appeal. Accordingly, the district court correctly ruled that Waterman failed to show that he was entitled to a late appeal under *Ortiz*.

13

Affirmed.